ALBANY.

Betts
v.
Turner.

\* 6 *Durnf.* 59.

(SUPREME COURT.)

### Betts *against* Turner.

THIS was an action of covenant, and the declaration stated in substance, that *John Baker,* on the 17th *October,* 1795, gave a promissory note to *William Hooker,* by which he promised to pay to him, or his order, on the 1st day of *April,* 1797, 833 dollars and 33 cents; that the defendant sold the note to the plaintiff, to be by him collected at his own risk and costs, as it respected the ability of *Baker* and *Hooker,* and that the defendant covenanted to and with the plaintiff, to pay him 2,000 dollars when required, " in case the plaintiff should take all and ker, could recover judgment legally, against the maker on the note, or against the payee, in case he had, at the date of the covenant, or should, previous to the suit against the maker, *discharge* the note;" if, in an action against the maker, the payee, according to the laws of the country, go into court and deny authorising the suit by the assignee against the maker, the assignee cannot maintain an action on the covenant against the vendor, if by the law of the country the payee be, in such case, liable for the amount, without first showing a legal endeavour, by suit, to recover the amount against the payee. Covenants are to be construed, not merely by their *letter,* but their *spirit.*

On the sale of a note not negotiable, with a covenant by the vendor, to pay the vendee a certain sum, " if the vendee should take all and every legal step the law directs, to prosecute to effect, the maker and payee, to wit, if the vendee, and no one in his name, or in that of the ma-

Q q

ALBANY.

Betts
v.
Turner.

every legal step as the law directed, to prosecute to effect, *Baker* and *Hooker;* to wit, if the plaintiff, and no one in his name, or in *Hooker's* name, could recover judgment legally against *Baker*, on the note, or against *Hooker*, in case he had, at the date of the covenant, or should, previous to the suit against *Baker*, discharge the note."

The declaration further stated, that *Baker* resided -in *Massachusetts*, and that on the 31st *July*, 1797, the plaintiff sued *Baker* in *Hooker's* name, according to the laws of *Massachusetts;* that *Hooker* came into court, and denying that he had ever authorised the suit, the court dismissed it. That the plaintiff had taken all legal steps to sue *Baker* upon the note, and that he. could not sue upon it in his own name, either *Baker* or *Hooker*. That *Hooker* had never negotiated the note, so as that any person could sue upon it in his name, but himself; and that. *Hooker* had never discharged the note.

To this declaration the defendant pleaded, that *Baker* and *Hooker* reside in *Massachusetts*, and that the note was sold by *Hooker* to one *Cole*, and by him to one *Booth*, and by *Booth* to the defendant, who sold it to the plaintiff; that such notes were not negotiable by the laws of *Massachusetts*, so as to enable the assignee to sue in his own name, but that he could sue in the name of the original payee, and that if the payee *released the suit or discharged the note*, he became liable to the holder, for the amount of such note, of which law the plaintiff, at the time of the delivery of the note, had notice; and that the plaintiff did not prosecute *Hooker*, nor attempt to recover a judgment against him on the note, as he might and ought to have done, according to the laws of *Massachusetts.*

To this plea there was a general demurrer and joinder.

*Per Curiam*, delivered by KENT, J. By the covenant, it appears, that the plaintiff was to do a previous act, to entitle him to maintain a suit on the covenant. This previous act, like all other stipulations in covenants, must be done fairly and faithfully, according to the spirit and intention of the agreement. It may be proper to observe, as a rule in the construction of covenants, that they are to be performed according to their spirit rather than their letter, "*ut res magis valeat quam pereat.*"

The beneficial end that the parties had in view, is to be primarily regarded and enforced ; and, therefore, where an obligee engaged to deliver up his obligation to the obligor, by such a day, and he, in the mean time, put it in suit, recovered upon it, and then delivered it ; this, although a compliance with the *words* of the agreement, was held no performance of the *intent*.* So, where A. covenanted with B. that he should enjoy a term of six years, discharged from tithes, and a suit was brought, *after* the expiration of the term, for the intermediate tithes, it was held, that B. was as much prejudiced by a suit after the term, as he would have been before, and that the intent of the covenant was, that he should be freed from suit and payment ; the covenant, therefore, broken.† By the same just and liberal rule of interpretation, it is declared, that if one covenant to deliver the grains made in a brew-house, and in the mean time, he mix them with hops, so as to render them unpalatable to cattle ; or engage to deliver so many yards of cloth, and he cut it in pieces, and then deliver it ; or if he covenant to leave the timber on the land, at the expiration of a lease, and he

* *Cro. E.* 7.

† *Cro. E.* 916.

*T. Raym. 464.
† See 1 Sid. 48.
151.

cut it down and so leave it,* these, and other nume-
rous instances of the like kind, to be met with in the
books,† are all alleged to be breaches of the covenant;
because, the law regards not a *literal* but a *real* and
*faithful* performance of contracts, according to the
*intent* of the parties.

These principles ought to be kept steadily in view,
as having an application to the present case.

It is pretty obvious, that the defendant did not in-
tend to pay the 2,000 dollars, until the plaintiff had
faithfully tried, and tried in vain, to recover the
amount of the note from *Baker*, and from *Hooker*.
The note was sold to the plaintiff, to collect at *his
own risk*, so far as respected the ability of *Baker* and
*Hooker;* and it was a condition precedent to the pay-
ment of the money by the defendant, that the plain-
tiff should take all and every legal step, as the law
directed, to prosecute to effect, *Baker* and *Hooker*.
He did take those steps to prosecute *Baker*, but not
to prosecute *Hooker*, although the latter became lia-
ble to him, for releasing the suit he had instituted in
his name, against *Baker*.

Here, then, appears a palpable failure on the part
of the plaintiff, of an act which was necessary to en-
title him to his suit against the defendant; I mean
the failure of taking the steps by law directed, to
prosecute to effect, *Hooker* as well as *Baker*.

It may, however, be objected, that the case in
which *Hooker* is to be prosecuted, is afterwards par-
ticularly stated in the covenant, and that *Hooker* was
only to be prosecuted, if he had, at the date of the
covenant, or should, previous to the suit against *Ba-
ker*, discharge the note; and, that, never having

ALBANY.

Betts
v.
Turner.

discharged the note, the plaintiff was under no necessity, by the covenant, of prosecuting *him*. To this, I answer, that, although this be the *letter*, it cannot be the *intent* of the agreement. The agreement, in the first instance, provides generally, that the plaintiff shall prosecute to effect, both *Hooker* and *Baker*, and it then proceeds to specify the instance, in which *Hooker* is to be prosecuted; to wit, if he had then already, or should, previous to a suit against *Baker*, discharge the note. But the rational meaning of the covenant, deficient as it may be in perspicuity and precision, cannot be otherwise than this, that the plaintiff should first prosecute *Baker*, and, if *Hooker* should prevent him from recovery against *Baker*, that he should then prosecute *Hooker*.

The defendant seems to have contemplated but a *single* case, in which *Hooker* could prevent a recovery, and that case, which was the discharge of the note, he has specified; whereas, an interference in *Hooker*, by discharging or releasing the suit, was an equal impediment to a recovery, and equally exposed *Hooker* to a prosecution.

The plaintiff was to take every legal step to obtain a recovery, both against *Baker* and *Hooker*, but he omitted to take any step against *Hooker*, and now alleges, as his sufficient excuse, that *Hooker* did not prevent a recovery against *Baker* in the manner mentioned and expressly provided for in the covenant.— It is true, he prevented a recovery by discharging the *suit*; but he did not prevent a recovery by discharging the *note*, and he must prevent the recovery

in the latter mode, and not in the former : otherwise he was not to be prosecuted.

I dislike any such subtle distinction, calculated, as it appears to me, to elude the end and design of the covenant ; for I cannot conceive any possible inducement, on the part of the defendant, to stipulate, that the plaintiff should previously prosecute *Hooker*, if he prevented a recovery against *Baker*, by discharging the note, which would not equally be felt, and equally operate, if *Hooker* prevented a recovery against *Baker*, by discharging the suit. And for the plaintiff to pretend, that he was bound to prosecute *Hooker*, in the one case, because it was expressly mentioned in the covenant, and not bound in the other case, because it happened to be omitted, although precisely within the same reason, is for him to construe the article by its *letter*, and to disregard its *spirit*. It is, in allusion to the cases mentioned, to deliver up the obligation by the day, but in the mean time, to prosecute and recover upon it. It is to deliver the cloth, but after it is cut to pieces. It is to leave the timber on the land, but to leave it prostrate.

I am, accordingly, of opinion, that the plaintiff has not shown, in his declaration, the requisite previous performance on his part, and that judgment ought to be rendered for the defendant.

Judgment for the defendant.