# McCAULEY vs. THE STATE.

1. A lawyer's office, though a "public house" within the statute against gaming, (Code, § 3243,) is not a "public place."

2. The constitutional guaranty of a trial by jury, "in all criminal prosecutions," includes the right to have the deliberations of the jury continued, when once they have begun the trial and heard any evidence, until the occurrence of a sufficient legal reason for their discharge, and the chance of a verdict of acquittal at their hands during all that time ; and therefore the unauthorized discharge of a jury in any criminal case, either for a misdemeanor or a felony, is equivalent to an acquittal. (CHILTON, C. J., expressing no opinion.)

3. But, since the court has power to discharge the jury in cases of necessity, or when the prisoner consents to it, a plea of a previous withdrawal of the cause from the jury after issue joined, "without the consent of defendant, and against his objection", is defective on demurrer : it should also negative the existence of any necessity for such withdrawal.

APPEAL from the Circuit Court of Pickens.

Tried before the Hon. ALEX. B. CLITHERALL.

THE appellant, with Bird Ivey, William T. Hawkins, William H. Davis, Joseph May, and Robert O. Bealle, was indicted, at the Spring term, 1854, of the Circuit Court of Pickens, for gaming. He filed a special plea to the indictment, in which he avers, "in short by consent, that at the present term of this court he was charged upon this identical indictment, for the identical offence charged therein, and for which he is now put on trial, together with one William T. Hawkins and one Joseph May, and that for his plea to said indictment he said he was not guilty, and issue was thereupon joined by the State of Alabama, and said cause was put to a jury of twelve good and lawful men in said Circuit Court, duly elected, empanneled, and sworn to try said issue so joined as aforesaid ; and Alfred E. Van Hoose, Esqr., the solicitor who prosecuted said cause on behalf of the State of Alabama, proceeded to examine a witness to prove the issue on the part of the State of Alabama ; and after said cause had been put to said jury, so elected as aforesaid, upon the issue joined as aforesaid, and after the solicitor aforesaid had proceeded to examine a witness to prove said cause on behalf of

the State as aforesaid, the honorable the Circuit Court of said county, without the consent of this defendant, and against his objection, on motion of said solicitor, granted him leave to sever the trial of the parties who had jointly put in the plea of not guilty to the charge in said indictment, and withdrew the cause as to this defendant from the jury to whom, as aforesaid, the same had been submitted for trial ; all of which this defendant is ready to verify by the record."

The court sustained a demurrer to this special plea, and the defendant then pleaded not guilty ; on which plea issue having been joined, a trial was had, and the defendant found guilty and convicted. From the bill of exceptions it appears, " that the evidence showed that the defendant played a game with cards, in the office of Z. L. Nabors, a practicing attorney, in the town of Carrollton in said county, which is the county site ; that the office is on the same lot with the said lawyer's dwelling-house ; it fronts on the street,—the enclosure of the dwelling-house running to the front corner of said office ; a young man, a minor who was in the employ of said lawyer in his printing office, which is disconnected with said office, sleeps in it ; that the game played by McCauley was in the night-time, by the consent of the young man, who did not engage in the game ; that the application for leave came from McCauley, or from some one in his company ; that the playing commenced about nine o'clock at night, when the doors were locked and the curtains of the windows drawn, so that the inmates could not be seen from the outside ; that the number engaged in the playing were four or five, and there was no person present who did not engage in the playing, except the minor above mentioned. It was in evidence, also, that on several occasions before this time, applications had been made to the young man for leave to play cards in this office, which he granted ; that he had no permission from his employer (the said lawyer) to permit gaming in said office, but, on the contrary, his employer had expressly forbidden him ; but whether this was before or after the playing he could not tell. It was also in evidence, that there had been playing in said office on a Sunday ; but there was no proof connecting defendant with it.

" Upon this evidence, the court charged the jury, that, if

they believed the evidence, the defendant was guilty of play-ing cards in a public place, within the purview of the statute ; to which charge the defendant excepted."

No errors are assigned on the record.

S. F. HALE, for the appellant :

· 1. After a criminal cause has been submitted to the jury, and some evidence offered by the State, a withdrawal of the case from the jury, unless for some of the causes allowed by the statute, operates as an acquittal, and the prisoner cannot be again put upon his trial for the same offence.—Mount v. The State, 14 Ohio 295 ; The People v. Barrett & Ward, 2 Caines' R. 304 ; The State v. McKee, 1 Bail. 651 ; Com-monwealth v. Cook, 6 Serg. & R. 577.   The cases referred to by the Attorney General are not in point : the Virginia case (7 Gratt. 667) was on a statute ; and the New Jersey case (4 Halst. 257) was one of necessity, as one of the jury had escaped.

2. The charge was erroneous.—Burdine v. The State, 25 Ala. 60.

M. A. BALDWIN, Attorney General, and P. T. SAYRE, contra:

If the court suffers a case to be withdrawn from the jury after some evidence has been submitted to them, this does not entitle the defendant to a discharge under that indictment. Dye v. Commonwealth, 7 Gratt. 667 ; Hall v. The State, 4 Halst. 257 ; The People v. Ellis, 15 Wend. 371 ; The People v. Denton, 2 John. Cas. 271 ; The People v. Olcott, 1 ib. 301 ; 8 Cowen's R. 127 ; 9 Leigh's R. 614 ; Mahala v. The State, 10 Yerg. 535 ; The State v. Brooks, 3 Humph. 70 ; The State v. Morrison, 3 Dev. & Bat. 115.

RICE, J.—Upon the authority of the case of Windham et. al. v. The State, decided at the present term, we must hold the charge of the court to be erroneous ; for, although the office where the playing occurred is a " public house", it is not " a public place", within the meaning of section 3243 of the Code.

As the cause must be remanded for the error above noticed, it is proper that we should express our opinion upon the im-portant questions which are connected with the matter stated

in the special plea, to which a demurrer was sustained. The first of these questions is, whether there can be, in this State, any such thing as the unauthorized discharge of a jury, in the case of a *misdemeanor*. If there is, the next question will be, whether such discharge is equivalent to an acquittal. And if that be so, the remaining question will be, whether the facts stated in said special plea establish such discharge.

No such questions have heretofore been presented to, or decided by this court, in the case of a *misdemeanor*.

In Ned v. The State, 7 Porter's R. 187, (a capital case,) our predecessors, upon a review of the leading English and American authorities, decided (among other things), that courts have not, in capital cases, a discretionary authority to discharge a jury, after evidence given ; that a court does possess the power to discharge a jury, in any case of pressing necessity ; that, although the judge determines the existence of the facts, yet, when they are ascertained, the law determines whether they constitute a case of necessity ; and that the unauthorized discharge of a jury is equally as fatal to any subsequent trial, as an acquittal or conviction.

In Cobia v. The State, 16 Ala. 781, (an indictment for murder,) this court held, that the discharge of the jury, before verdict rendered, " must be understood to mean *a legal discharge*", and that the result of the authorities was, " that if the prisoner be put on his trial upon a sufficient indictment, and the evidence in support of the charge is submitted to the jury, the court cannot *arbitrarily interfere and arrest the trial by discharging the jury ;* and if the court should discharge the jury before they deliver their verdict, without *a sufficient legal reason* for doing it, the prisoner shall never be tried again."

Every decision of this kind rests upon this solid ground :— that such decision is essential to preserve inviolate to the prisoner *the right of trial by jury*, as guarantied by the constitution. This right cannot mean less than a right to have the deliberations of the jury, when once they have begun the trial and heard any evidence, continued until the occurrence of a sufficient legal reason for their discharge, and the right to have, during the entire period of such continuance, the chance of a verdict of acquittal at the hands of that jury. It is impossible for any judge to say, that the jury would not

have acquitted him. It is equally imposssible for any judge to say, he can get another jury who will acquit him. The law does say, if any jury ever does acquit him, their verdict shall not be set aside by any court, however unwarranted by the law and the evidence in the case that verdict may be. The chance of a verdict of acquittal, at the hands of *each jury* to whom the cause and any evidence have been submitted, is obviously important to a prisoner, and is clearly embraced in the guaranty of trial by jury. To deprive the prisoner of this chance, by the lawless act of the court in discharging the jury, is a flagrant wrong, for which there is no remedy, except to treat such deprivation as equivalent to an acquittal. To hold that there is no remedy for such a wrong, is to hold that the right of trial by jury has ceased to be a right ; for if, by such lawless act of the court, one jury may be discharged, an indefinite number may be discharged in the same manner.

That the ground above stated is the unassailable ground upon which the decisions above cited must rest, is evident from the fact, that whilst they hold that the unauthorized discharge of a jury before they render a verdict will protect the prisoner against a subsequent trial as fully as a verdict of acquittal, they also hold, that if the prisoner has been actually convicted, and the judgment has been reversed, or a new trial granted, at his instance, he may be tried again. The principle which reconciles these two positions, thus maintained in these decisions, may be thus stated : The constitutional guaranty of trial by jury is broken by the lawless discharge of a jury after they hear some evidence and before they render a verdict ; but, where a trial is actually had, and a verdict of guilty rendered, that guaranty is not broken by mere errors committed on that trial, for the correction of which a remedy is provided by law. If the prisoner has not been lawlessly deprived of his chance of a verdict of acquittal, by an unauthorized discharge of a jury, but has had a trial by jury and been found guilty,—in that case, although errors may have been committed by the court on the trial, to his prejudice, he has his remedy whereby he can procure from a revising court the correction of such errors—the reversal of the conviction, and another chance for a verdict of acquittal on a subsequent trial. If, however, the prisoner has been deprived of his

chance of a verdict of acquittal by a jury who have begun his trial and heard some evidence, by the lawless discharge of that jury, there is no remedy anywhere for this lawless discharge, except to treat it as equivalent to an acquittal. To withhold the only remedy in such a case, is to surrender to the lawless discretion of the judge the constitutional right of trial by jury.

We concede, that before a jury is empanneled to try a criminal case, the court has the discretionary power to sever the trial or continue the case ; " but," as the Supreme Court of Massachusetts have well said, " when a jury is empanneled for the trial of an indictment, the defendant *then acquires new rights*, which the court will protect." "When once put on his trial, and a jury sworn for that purpose, it is *his right to have them pass upon his case*. Their verdict will be a bar to another indictment for the same offence : a *nolle prosequi* will not. *He is entitled to this bar*. The Attorney General, finding his evidence insufficient, might discontinue for the purpose of commencing another prosecution, and then subjecting the defendant to *another trial*. *This the law will not permit*. In *this stage* of the proceedings, a *nolle prosequi* cannot be entered without the consent of the defendant."—Commonwealth v. Tuck, 20 Pick. 356 ; see, also, Mount v. The State, 14 Ohio 295.

"It is a well understood maxim of our law", say the Supreme Court of Tennessee, " that the judges are to expound the law, and the jury to ascertain the facts, neither of which has the power to interfere with the province of the other. The jury, in their deliberations upon the facts, are as independent of the court, as the judge, in determining the law, is of the jury ; and the consequence is, that *when a case has been submitted to a jury*, there it must remain until it has been decided by them, or is withdrawn from their consideration, *not at the will and pleasure of the court, but under circumstances justified by law*."—Mahala v. The State, 10 Yerg. 235.

The cases of Mahala v. The State, *supra*, and of Ned v. The State, 7 Port. 187, contain such a review of the authorities, and so correct an exposition of the law, on the subject under consideration, as to relieve us from the citation of any great array of authorities.

The earliest American cases upon the subject of the power

of the court to discharge a jury without a verdict, in cases of *misdemeanors*, which we have been able to find, are The People v. Denton, 2 Johns. Cases 275, and The People v. Olcott, *ib.* 301. In both these cases, *the necessity* for a discharge of the jury is one of the grounds of decision. It is the only defensible ground ; for the other ground of decision was the bald assumption, that the power of courts to discharge a jury, in cases of *misdemeanors*, is analogous to their power in *civil cases*, and rests in discretion.

Both these decisions were made in 1801, and whilst the justly distinguished Judge Kent was a member of the Supreme Court of New York. He concurred in the first case, and delivered the opinion in the last. He continued to be a member of the same court until 1805, when the same question, in the case of a *misdemeanor*, again came before that court, in the case of The People v. Barrett, 2 Caines' Rep. 305 ; and notwithstanding Judge Kent and that court had apparently been committed by the cases above cited from 2 Johnson's Cases, he and the whole court decided, that the discharge of a jury, in a case of *misdemeanor*, " merely because there be not testimony sufficient to convict, with a view to another trial, falls within the reason of none of the authorities", and entitled the prisoner to his discharge ; and the prisoner was discharged accordingly.

But notwithstanding this signal and practical repudiation by that very able court of the doctrine " that the power of courts to discharge a jury, in cases of *misdemeanors*, is analogous to their power in *civil cases*, and rests in discretion,"— the error of its promulgation was not entirely cured thereby : for some judges have followed that error and adopted it on the authority of the case of The People v. Olcott, without noticing or seeming to be aware that it was practically repudiated by the same court in The People v. Barrett, 2 Caines' Rep. 305. Other judges have adopted the same error, without giving any reason for it.

We think it is a great mistake, to assert that the common law made no substantial distinction between the power of a court to discharge a jury in a *civil case*, and its power to discharge a jury in the case of a *misdemeanor*. It is universally conceded, that Sir William Blackstone was thoroughly ac-

quainted with the common law. The distinction between trial by jury in *civil cases*, and trial by jury in *criminal cases*, is very clearly stated in his Commentaries. He says : "The trial by jury is that trial by the peers of every Englishman, which, as the grand bulwark of his liberties, is secured to him by the great charter. * * The antiquity and excellence of this trial, for the settling of *civil property*, has before been explained at large. And it will hold *much stronger in criminal cases;* since, in times of difficulty and danger, more is to be apprehended from the violence and partiality of the judges appointed by the crown, in suits *between the king and the subject*, than in disputes *between one individual and another*, to settle the metes. and boundaries of private property. Our law has, therefore, wisely placed this strong and *twofold barrier* of a *presentment* and *a trial by jury* between the *liberties of the people* and the *prerogative of the crown.*"—4 Bl. Com. 349.

He also says : "In many instances where, contrary to evidence, the jury found the prisoner guilty, their verdict hath been mercifully set aside, and a new trial granted by the Court of King's Bench ; but there hath yet been *no instance* of granting a new trial where the prisoner was *acquitted* on the first." 4 Bl. Com. 361. In The King v. Mawbey, 6 Term Rep. 639, the doctrine that "defendants who have been *acquitted* in criminal-cases cannot be tried a second time", was stated, and not denied or questioned. In that case, Lord Kenyon, C. J., asserted that, in offences greater than misdemeanors, it had been held, no new trial could be granted, even in favor of a prisoner who had been convicted, but that in misdemeanors, a new trial could, be granted in favor of " those who have been *convicted.*" In the same case, Lawrence, J., said, "Arguments drawn from *civil cases* are not applicable to *the present.*"

In 1 Chitty's Crown Law 657, it is laid down, that " a new trial cannot, in general, be granted in favor of the prosecutor, after the defendant has been *acquitted*, whether on an indictment for a *misdemeanor* or a felony, even though the verdict appears to be against evidence, or was upon the misdirection of the judge."

The common law, as to the power to grant new trials, as stated in the foregoing extracts from Blackstone and Chitty, has ever been recognized as part of our law ; and consequently,

no new trial has ever been granted, or can be granted in this State, in any criminal case, where the defendant has once been acquitted.

In a civil case, the court may, at its pleasure, and without liability to revision, set aside a verdict, whether for the plaintiff or the defendant, and grant a new trial : and it is because the court possesses this unlimited discretion to grant a new trial in a civil case, that it may, in such a case, before verdict, arrest the trial, and order the cause to be tried by another jury.—*Ex parte* Edward Henry, 24 Ala. 638.

Our law allows an equal number of challenges to each party in a civil case ; in the case of a misdemeanor, six challenges are allowed to the prisoner, but only four to the State.   In a civil case, the verdict ought to be rendered for that party in whose favor there may be a mere preponderance of the evidence ; but in the case of a misdemeanor, although there may be a preponderance of the evidence for the State, the jury ought not to find against the prisoner unless they are satisfied beyond a reasonable doubt of his guilt.—State v. Murphy, 6 Ala. 845; State v. Newman, 7 *ib.* 69.   An appeal is allowed to either party in a civil case, from the final judgment ; but no appeal or writ of error is allowed to the State, from a judgment rendered on a verdict of acquittal in the case of a misdemeanor, although the prisoner, if convicted, is entitled to a writ of error.

As our law ever has made, and still makes, such a broad distinction between a civil case and a case of misdemeanor, we ought not to recognize as authority any decision which is founded upon the assumption that there is no distinction, in these two classes of cases, as to the power of the court to discharge a jury before verdict rendered.   The unavoidable effect of such decisions would be, to arm the judges of the primary courts with a tremendous power to oppress the citizen, and to place the *improper* exercise of this terrific power beyond the "superintendence and control" of the Supreme Court, and of the laws and constitution of the State.

Our constitution guaranties the right of *trial* by jury "in *all* criminal prosecutions" (for misdemeanors, as well as for capital offences).   This right must remain inviolate.   New and arbitrary methods of arresting trials, in criminal cases, even in misdemeanors, cannot be tolerated.   "These inroads

upon this sacred bulwark of the nation are fundamentally opposite to the spirit of our constitution ; and, though begun in trifles, the precedent may gradually increase and spread, to the utter disuse of juries in questions of the most momentous concern."—4 Bl. Com. 350.

Our opinion is, that, in this State, any discharge of a jury, which would protect a person indicted for a capital offence from a subsequent trial, will work the same result in favor of a person indicted for a misdemeanor ; that, in this respect, there is no middle ground—no difference between a capital case and a case of misdemeanor, as the constitution guaranties the right of trial by jury "in *all* criminal prosecutions"; that any unauthorized discharge of a jury, in any criminal case, is equivalent to an acquittal ; that the court possesses the power to discharge a jury in cases of necessity, or when the prisoner consents to it, but in no other cases ; that the discharge of a jury without the consent of the prisoner, and without a necessity for the discharge, is unauthorized ; that the sudden illness of a juror, or of the prisoner, so that the trial cannot proceed, are ascertained cases of necessity, and serve as examples to show what the law means by a case of necessity.

We come now to the last question for our consideration— that is, whether the special plea is good. "Although it is a general rule, that the *allegata* and *probata* must correspond, and that a party need not allege more than he is bound to prove, yet the rule is not of universal application : sometimes a party is required to negative the existence of a fact, the *onus* of proving which rests upon his adversary." Thus, when the surety sets up as a defence an extension of the time of payment given by the creditor to his principal, the surety must *aver* that the indulgence was given without his consent. Carpenter v. Devon, 6 Ala. 718. So, when a prisoner pleads that a jury was discharged by the court, after the trial had begun, he must not only aver that such discharge was without his consent, but he must go further, and aver that such discharge was without any necessity. The plea in this case does not negative the existence of any necessity for the discharge of the jury ; and for this omission in the plea, it is bad, and there was no error in sustaining the demurrer to it. In all other respects, the plea is sufficient.

After several defendants are put on their trial before the same jury, the court cannot allow a severance, and withdraw the case as to one of the defendants from that jury, without his consent, unless there existed at the time such a necessity as would have authorized the court to discharge the jury, as to that defendant, without his consent, and without a severance. Such withdrawal of the case of one defendant from the jury is a virtual discharge of the jury as to him whose case is so withdrawn, and its legality must be determined alone by the rules which determine the legality of any other discharge of a jury in a criminal case.

If the special plea is amended by inserting in it an additional averment negativing the existence of any necessity for the withdrawal of the case from the jury, it will then be a good plea.

For the error in the charge of the court below, above referred to, its judgment is reversed, and the cause remanded.

CHILTON, C. J.—I agree in the result—to-wit, that the playing was not at a public place, and that the plea, failing to negative the idea that the judge, in ordering the severance, acted within the scope of his legal discretion, was properly held bad on demurrer. As to the power of the court in withdrawing causes from a jury, and whether this power is the same in respect of felonies and cases of mere misdemeanor, I desire to be considered as expressing no opinion, since in my judgment these questions are not raised upon the present record.