## BARRETT *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Discharge of jury without prisoner's consent.*—Although it is the safer and more prudent practice, unless some great and overruling necessity requires a different course, that the circuit court should continue its session until the end of the term prescribed by law, before discharging a jury charged with a criminal case, and entering a mistrial; yet, if the other business of the court has been disposed of, and the jury have considered of their verdict so long as to indicate the absence of all probability that they will agree, the court may discharge them, and enter a mistrial; and in determining the question whether they have considered their verdict for such a reasonable time as would authorize their discharge, something must be left to the judgment and discretion of the presiding judge.

FROM the Circuit Court of Shelby.

Tried before the Hon. JOHN E. MOORE.

THE prisoner in this case, Walter Barrett, was indicted in the circuit court of Bibb county, at its fall term, 1854, for the murder of Jesse Langford. At the March term, 1856, the case was removed on the prisoner's application, to Shelby county, where he was finally tried at the September term, 1859, and convicted. The proceedings had on the trial are thus stated in the bill of exceptions:

"When this case was called for trial, on Wednesday of the second week of the term, and the prosecuting attorney had announced the State ready for trial, the prisoner moved the court that he be discharged and go hence, without being required further to answer the indictment pending against him. On this motion, the following facts appeared in evidence before the court: The last spring term of this court, 1859, commenced its session on Monday, the 14th March, and was limited by law to two weeks. Wednesday of the second week, being the 23d day of March, was set for the prisoner's trial under the indictment which he is now required to answer; and he was then and there put on his trial under said indictment, before a jury of twelve good and lawful men, duly elected,

empanneled, and sworn. Many witnesses were thereupon examined before the court and jury on the part of the State, and many others were examined on the part of the prisoner to sustain his plea of not guilty. The trial of said case continued through the 23d and 24th days of March, and the arguments of counsel were not closed until after dark on Thursday night. The jury were then charged by the court on the law of the case, and retired to consider of their verdict about 10 o'clock at night. On the morning of the 25th, the jury several times came before the court for further instructions, which were given to them; and they then stood, nine for acquitting the prisoner, and three for convicting him of manslaughter. After further instructions were given to them by the court, in the forenoon of the 24th, one of the three changed his position, making ten for acquittal, against two for conviction as aforesaid; but he went back in the evening, and the jury then stood as before. One of the jurors was asked by the prisoner, in support of his motion for a discharge, whether or not there was any likelihood of an agreement on the part of the jury; and his reply was, that there was none whatever in his opinion. On Wednesday, the 23d March, when the parties in said case announced themselves ready for trial, the attorneys in attendance on the court agreed, that all civil cases, standing for trial at that term of the court, should be continued by consent, unless some case should be taken up and disposed of by agreement; and this agreement was announced by the court. In the forenoon of the 25th, while the jury were considering of their verdict, several civil cases were tried and disposed of; and there was no proposition, by either parties or counsel, to take up any other case. On said 25th March, the presiding judge of said court was anxious that said term should be closed, in order that he might visit his family at his residence in Jefferson county, before going to Tuskaloosa to hold court, and also that he might procure some papers which he desired to attend to; and he so expressed himself on that day to several persons in Columbiana. About 3 o'clock in the afternoon of said 25th March, the jury came

into court, and announced to the court that they had not agreed on a verdict in said case, and did not think they ever could agree. One of the prisoner's counsel then and there insisted in his behalf, that the jury should continue their deliberations, and should not be discharged. The court, however, about the hour of 3 *p. m.*, did discharge said jury, who thereupon dispersed, and closed said term of the court, and ordered said case to stand for trial at the next term of the court. The presiding judge was in good health at the time said term of the court was thus closed, and had his horse and buggy standing ready at the court-house, and started off in his buggy immediately after the adjournment, declaring his purpose to go to his residence; and on the next morning he was at Elyton. At the time said jury were thus discharged by the court, the criminal docket had been disposed of, the last of the cases having been disposed of a few minutes before said jury were discharged. It was shown that the distance from the court-house of Shelby county to Elyton was thirty-six miles, and from Elyton to Tuskaloosa was fifty-six miles; also, that the distance from the court-house of Shelby county to Tuskaloosa was sixty-three miles, and that this distance could be traveled in a day and a half by private conveyance, or in less time by taking the railroad a part of the way."

On the part of the State, the minute entry made in the case at the said March term was read in evidence to the court, which was in the following words:

"The State of Alabama⎫  This day, March 23d, 1859,
    *vs.*  (Murder.)⎬ came J. W. McRae, appointed
  Walter Barrett.  ⎭ by the court to prosecute in the absence of the solicitor, L. V. B. Martin; and came also the defendant, Walter Barrett, in his own proper person, charged by indictment for the murder of Jesse Langford; and the said defendant, having been arraigned, pleaded not guilty to the said indictment. Thereupon came a jury of good and lawful men, to-wit, William H. Moore and eleven others, who were empanneled, sworn and charged well and truly to try the issue so joined, and a true verdict to render according to the evidence. And

now on this day, the 25th March, 1859, came into court the jury aforesaid, and say, that they have fully considered all and singular the premises, and that they are wholly unable to agree on the verdict they should render; and it appearing that all the business before this court has been disposed of, and that a reasonable time has been allowed the jury to consider and determine as to their verdict, and that they cannot* agree, and that it is now absolutely necessary that the court should be adjourned, in order to enable the presiding judge to reach Tuskaloosa in time to open the court in that county as required by law, and that the term of this court is now closed and at an end,—it is therefore considered, that the said jury be discharged, and that this case be continued and stand for trial at the next term of this court."

" When this record was offered in evidence, the prisoner made separate objections to each of the following portions thereof, to-wit: 1st, 'and say that they have fully considered all and singular the premises;' 2d, 'and that they are wholly unable to agree on the verdict they should render;' 3d, 'and it appearing that all the business before this court has been disposed of;' 4th, 'and that a reasonable time has been allowed to the jury to consider and determine as to their verdict;' 5th, 'and that they cannot agree, and that it is now absolutely necessary that the court should be adjourned;' 6th, 'and that the term of this court is now closed and at an end'—on the grounds, that these portions of said record were in nowise binding upon him, that they were *ex-parte*, and wholly inadmissible and illegal as evidence against him. The court overruled each of said objections, and allowed the whole of said entry to be read as evidence to the court; and the prisoner excepted. The above being the substance of all the evidence introduced before the court, the court overruled the prisoner's motion to be discharged, and ruled that he should be again put on his trial under said indictment; to which rulings and decisions of the court the prisoner excepted."

The prisoner then filed the following pleas:

" And now at this day comes the defendant, in his own

27

proper person, and pleading in short by consent, says, that at the last term of this court, he was charged upon this identical indictment, for the identical offense charged therein, and for which he is now put on his trial; that for his plea to said indictment he said that he was not guilty, and issue was thereupon joined by the State of Alabama, and said cause was put to a jury of twelve good and lawful men, duly elected, empanneled and sworn to try the issue so joined as aforesaid; that John W. McRae, acting solicitor for the State, introduced and examined many witnesses before the court and jury to prove the issue on the part of the State of Alabama, and the defendant also introduced and examined many witnesses to sustain the issue on his part; that after said case had been put to said jury, and after all the evidence in behalf of the State and of the defendant had been introduced before the court and jury, and after the court had given its charge to the jury, and after the case had been argued by counsel before the court and jury, the circuit court of said county, at and during said last term thereof, without the consent of this defendant, and against his objection, and without any legal necessity therefor, discharged the said jury from the further consideration of said case; all of which this defendant is ready to verify," &c.

"And for further plea in this behalf, said defendant, pleading in short by consent, by leave of the court, says, that at the last term of this court, he was charged upon this identical indictment, for the identical offense therein charged, and for which he is now put on his trial; that for his plea to said indictment he said that he was not guilty, and issue was thereupon joined by the State of Alabama, and said case was put to a jury of twelve good and lawful men, duly elected, empanneled and sworn to try the issue so joined; that John W. McRae, the solicitor who prosecuted said case on the part of the State, introduced and examined many witnesses before the court and jury to prove the issue on the part of the State of Alabama, and the defendant also introduced and examined many witnesses to sustain said issue on his part; that after said case had been put to said jury, and after said

witnesses had been examined, and after said case had been argued on its merits by counsel, and after the court had charged the jury in reference to the law thereof, the said circuit court, on (to-wit) the forenoon of Friday of the second week of said term, without the consent of said defendant, and without any legal necessity therefor, discharged the jury from the further consideration of said case; all of which this defendant is ready to verify," &c.

The State having joined issue on these pleas, "in short by consent, and set forth the record, with leave to show any special matter in evidence;" and a jury having been empanneled to try the case, the facts above stated, which had been adduced before the court on the motion to discharge the prisoner, were again proved before the jury; the prisoner again made the same objections; the court ruled as before, and the prisoner reserved exceptions to its several rulings. "The above being all the evidence in the case, the court charged the jury, that if they believed the evidence, they must find the issues joined on said pleas in favor of the State; to which charge the defendant excepted."

On the record filed in this court, (as in other criminal cases where bills of exceptions are reserved during the trial,) the prisoner also submits a motion for a *mandamus*, or such other remedial writ as may be necessary and proper to obtain his discharge.

I. W. GARROTT, and JNO. T. MORGAN, for the prisoner.
1. The constitution provides, that the right of trial by jury shall remain inviolate, and that an accused person shall not be twice put in jeopardy for the same offense. It is a consequence of these plain constitutional provisions, that the unauthorized discharge of a jury, to whom a criminal case has been submitted, is equivalent to an acquittal, and entitles the prisoner to his discharge. The discharge of the jury in this case, whether tested by the recitals of the minute entry, or by the facts proved on the motion for a discharge, was not authorized by law. All the business before the court was not disposed of, so long as one criminal case was under consideration by a

jury. It could not be asserted that the jury had been allowed a reasonable time to deliberate, or that they could not agree, until the expiration of the full term allowed by law for the holding of the court. If it was necessary that the court should be adjourned, "in order to enable the presiding judge to reach Tuskaloosa in time to open the court of that county as required by law," that necessity—in other words, the interests and convenience of the suitors on the civil docket in Tuskaloosa—did not authorize a sacrifice of the prisoner's constitutional rights, where his life and liberty were at stake. The facts proved by the prisoner make out a much stronger case in his favor, and show that the jury were discharged when they had been in consultation only about seventeen hours, and when thirty-one hours of the term fixed by law still remained; that the probabilities were all in favor of a verdict of acquittal; and that the supposed necessity for the adjournment of the court was only the private convenience of the presiding judge. That the discharge of the jury, under such circumstances, was unauthorized, is conclusively shown by the following authorities : Ned v. The State, 7 Porter, 187 ; Mounts v. The State, 14 Ohio, 275 ; Mahala v. The State, 10 Yerger, 255 ; Spiers' case, 1 Dev. Law, 491 ; Ephraim's case, 2 Dev. Law, 162 ; Commonwealth v. Cook, 6 Serg. & R. 577 ; McCauley v. The State, 26 Ala. 135 ; 7 Blackf. 186. Battle's case, 7 Ala. 259, is in conflict with these cases, and is violative of the constitutional provisions on which they rest.

2. The recitals of the record, to which the prisoner objected in the court below, ought not to have been received as evidence against him. They had nothing to do with the issues joined between him and the State, and, as to him, are *coram non judice.* The recitals of a court, to which the prisoner was no party, and over which he had no control, cannot be received to deprive him of his constitutional rights.

3. The question whether the discharge of a jury is authorized by any legal necessity, cannot be prejudged by the presiding judge, so as to prevent subsequent investigation. He may place on record the facts on which his

action is predicated; but the question whether they are, in law, sufficient to constitute a case of necessity, justifying his action, is a legal question which is not concluded by his decision.—McCauley v. The State, 26 Ala. 135; *Ex parte* Croom & May, 19 Ala.

M. A. BALDWIN, Attorney-General, *contra.*—1. The jury being unable to agree on a verdict after a reasonable time had been allowed for their deliberations, and the other business before the court having been disposed of, the court was authorized, without waiting until the last moment of the term as fixed by law, to discharge the jury, and enter a mistrial.—Battle's case, 7 Ala. 259; The State v. Brooks, 3 Humph. 70; 1 Lead. Crim. Cases, 359; Code, § 3603; 10 Yerger, 532.

2. Where a decision is made at one term of the court, the presiding judge at a subsequent term has no authority to review it.—Lynes v. The State, 3 Porter, 348.

3. *Mandamus* will not lie where the party has another specific remedy.—*Ex parte* Jones, 1 Ala. 15; *Ex parte* Small, 25 Ala. 77; Justice v. Mindy, 2 Leigh, 165; The State v. Holladay, 3 Halst. 205; People v. Brooklyn, 1 Wendell, 318. In this case, the prisoner had an adequate remedy by writ of *habeas corpus,* and also an appeal or writ of error after final judgment.—Code, §§ 3708, 3744, 3016, 3650.

4. *Mandamus* will not lie, irrespective of the question whether a party has or has not another remedy, for the purpose of requiring an inferior court to come to a particular conclusion, or to retrace its steps where it has already acted; nor will it be awarded to correct judicial errors.—*Ex parte* City Council of Montgomery, 24 Ala. 98; *Ex parte* Elston, 25 Ala. 72; *Ex parte* Small, 25 Ala. 74; Ex *parte* Rowland, 26 Ala. 133; *Ex parte* Garlington, 26 Ala. 171; *Ex parte* Williamson, 3 English, 424; 1 Manning, (Ill.) 359.

A. J. WALKER, C. J.—In the cases of Ned v. The State, (7 Porter, 187,) and McCauley v. State, (26 Ala. 135,) it was said that the court may, in a case of necessi

discharge a disagreeing jury, charged with a criminal cause; and that in such case, the accused might be put upon his trial a second time. Neither of these cases attempts to state or define all the necessities which would justify the discharge of a jury without the prisoner's consent.

In Battle's case, (7 Ala. 259,) it was decided, that a court might discharge a jury, without the defendant's consent, (the other business of the court being disposed of,) after allowing the jury a reasonable time to agree upon a verdict. In that case, the jury were discharged on the same day on which they retired to consider of their verdict; and this court held, that it would presume, (the contrary not appearing,) that a reasonable time had been allowed for the jury to consider of their verdict. This case is evidently based upon the principle, that the necessity, which authorizes a discharge of the jury, need not be physical; and that a case which the law recognizes as a moral necessity does exist, when the business of the court, other than the particular criminal case, has been disposed of, and the jury have so long considered of their verdict, without agreeing, as to indicate the absence of all probability that they would unite upon any conclusion; and in the determination of the question whether the jury have considered the case for a reasonable time, or until there is no probability that they will agree, something must be left to the judgment and discretion of the court which tries the case, which is cognizant of its nature, knows whether the questions are such as would probably give rise to serious and obstinate conflicts of opinion, and witnesses the manifestations which the jury give when they come into court.

The decisions, as to what constitutes a sufficient cause for the discharge of a jury in a criminal case, are in a most singular state of conflict and confusion.—See them collated in 2 Leading Criminal Cases, 358 to 374, and Wharton's Am. Crim. Law, §§ 573–591.

It is obviously important, when a rule of practice in reference to such a question as that now before us has been laid down by this court, that it should be adhered

to; otherwise, the circuit courts, in following the path marked out for them, might become the unwitting instruments of the discharge of the vilest criminals.    A careful examination of the decisions upon the subject has convinced us, that the doctrine of this court, as laid down in Battle's case, has much of authority and reason to support it.    We are by no means convinced that it is wrong upon principle, or will operate injuriously to the citizen or the government; and we think we consult a sound judicial policy in abiding by it.    We, therefore, decline to overrule the decision in Battle's case, and must approve the rulings of the court below upon the trial of the issue made upon the plea of *autrefois acquit;* for this case is a stronger one for the justification of the discharge of the jury, than was Battle's case.

We take occasion, however, to remark, that it is much the more prudent and safe course, for the circuit judges to protract the session of the court to the end of the term prescribed by law, where the duration of the term is fixed, unless some great and overruling necessity requires a different course, or unless the prisoner consents to the discharge of the jury ; for it is an extremely delicate and hazardous thing for the court to interfere with a prisoner's chances for life or liberty, by acting upon the apparent absence of any probability of an agreement by the jury.

The motion is refused.