Mr. Justice Clayton
delivered the opinion of the court.
This is a case involving the title to a number of slaves, and the question turns upon priority of lien.
The complainant, the Planters’ Bank of Tennessee, recovered a judgment in the circuit court of the United States at Jackson on the 14th May, 1842, against James Morton, and in the ensuing fall caused execution to be levied upon the slaves in dispute. Thomas C. Black had purchased the property from Morton, interposed his claim to it, and an issue was made up to try the right of property under the statute. In point of fact, no bond and surety were given by the claimant, but the giving of the bond was dispensed with by the plaintiffs in the execution, and the slaves by agreement left in the custody of the marshal. The issue was determined in favor of the bank on the 8th Nov., 1845, and the judgment of the court, rendered upon the finding of the jury, was that usually entered in an action of detinue, that the plaintiffs in execution recover of T. Black all the above named slaves, &c. A writ of distringas issued by virtue of this judgment, on the 26th of November, 1845, and the slaves were sold under it in *50 March, 1846, and were purchased by the complainants, the present appellants. Immediately after this sale, the slaves were seized by the sheriff of Yazoo county, by virtue of executions in his hands, under judgments against Morton in the circuit court of Yazoo, of older date than the judgment under which the complainant claims. This bill was filed to enjoin the sale by the sheriff.
To avoid the effect of this levy and of the older judgment liens, the complainant relies on the 13th section of the act passed “ to amend the several acts of limitations,” approved 24th February, 1844, which enacts, “ that no judgment hereafter rendered in this state shall be a lien on the property of the defendant or defendants, for a longer time than seven years; nor shall any judgment heretofore rendered, operate as a lien on the property of the defendant or defendants, for a longer time than two years from the passage of this act.”
To obviate the force of this statute, the defendants rely on an act approved 19th February, 1846, entitled an act to settle the construction of the 13th section of an act entitled an act to amend the several acts of limitations, approved February 24th, 1844. This statute directs, “ that the 13th section of the above cited act shall not be so construed, as to affect the right or impair the lien of any judgment where the plaintiff therein, or other person interested, has been prevented from levying his execution by reason of a preceding levy, under and by virtue of an execution emanating on a junior judgment; and when the officer thus levying such junior execution fails, refuses or neglects to sell the property thus levied on, on or before the 24th February instant, provided said judgment has been enrolled according to existing laws.”
It is insisted in argument that this law is unconstitutional. The right of the legislature to repeal, alter or modify a law, is not questioned ; but it is urged, that, upon its face, this is a legislative construction of a previous statute, and that the right to construe laws belongs to’ the judicial department of the government. Nothing is more clear than that it is beyond the scope of legislative authority, to put a construction upon its laws which can be obligatory upon the courts. The province of the legisla *51 ture is to enact laws, that of the court to expound or interpret them. If then this be merely a legislative construction of the law, it is of no obligation; but if it be in reality a substantive enactment of a distinct provision, which operates an exception to the general terms of the statute#., then, as such exception might have been made in the first instance, so it may equally be made, at any time before, the defence under the statute has attached.
But there is another point in this cause, which renders a decision of this question unnecessary. -Assuming the act of 1846 to be valid, does this case come, within it? If there was any time previous to the act of 1846, when the executions might have been levied, then the act does not apply.
The statute regulating the trial of the right of property in substance enacts, that if the issue*be found in favor of the plaintiff in the execution, it shall be the duty of the court to pronounce such judgment, as would be pronounced in an action of detinue, for the specific property, if to be had, and if not, for its value as assessed by the jury, and execution shall issue accordingly; and in all cases the assessment made by the jury of the value of the property, shall determine the amount of credit to be given, on the execution originally levied on said property. Hutch. Code, 913.
The effect of this law is to satisfy the original execution by the levy, to the extent of the value of the property, provided the levy be sustained; and from that time, it becomes a matter entirely between the plaintiff in the execution and the claimant. The'statute requires the property to be delivered to the claimant. On the determination of the issue against him, the original execution is to be credited by the value of the property; the levy is discharged, and the plaintiff looks to the property in the hands of the claimant, or to the bond' which he executed. It hence follows that, after the determination of this issue, there was no legal impediment to the levy of the executions of the defendants in this cause. There was then no subsisting levy of the marshal upon the slaves; they were in intendment of law in the possession of the claimant, not in the custody of the law. If *52 they were really in possession of the marshal, under the agreement of the parties, they were held by him as their agent, not in his official capacity. In this situation a levy upon them by the sheriff, would have created no conflict of jurisdiction. This was certainly the case until the distringas issued, and until the marshal took possession under it. It did not issue until seventeen days after the trial, and it does not appear when possession was taken under it.
The true object of this writ was to compel a delivery of the property to the marshal, and it confers no authority to sell, unless by special order of the court. Tidd’s Prac. 110; Hutch. Code, 904, § 45. It was process against the claimant, not against the original defendant. The marshal was not required by the law to sell the slaves under the original judgment. The value assessed by the jury was to be indorsed as a credit upon the execution without sale, and the law did not authorize any sale under it. He could not then be said, in the language of the statute, “ to have failed, or refused or neglected to sell the property so levied on,” because it had already been disposed of by law.
We therefore think the defendants were not prevented from levying their executions, by reason of a previous levy, during the whole two years; and that the officer having made the disposition required by law, did not within the meaning of the act- “ fail, or neglect, or refuse to sell the property levied on.” Consequently the defendants are not protected by the statute.
It is contended in argument in their behalf, that the 13th section of the law of 1844 is not in force, because it stands opposed to the 11th section of the dnrolment law, which makes the lien continue five years. Both of these laws were approved the same day, and it is said, the one giving the longer time should be enforced.
How this ought to be decided, if these two acts stood alone, we need not undertake to say. The act of 1846 recognizes the 13th section,'as one existing and in force. To this extent it must be considered valid, whether in its other terms it enacts a new provision, or merely furnishes a rule of construction. It *53 has regarded the 13th section as in force, and it is not for us to say now that it was repealed by implication.
The decree dissolving the injunction is reversed, and the injunction made perpetual.
Decree reversed.