The State v. Nelson.

The judgment is affirmed, with costs.

*J. Yaryan* and *J. S. Reid*, for appellants.

*B. F. Claypool*, for appellees.

---

THE STATE *v.* NELSON.

ONCE IN JEOPARDY.—DISCHARGE OF JURY.—The discharge of a jury in a criminal case, because of their inability to agree upon a verdict, after a protracted deliberation, does not entitle the defendant to his discharge on the ground that he has been once in jeopardy.

APPEAL from the *Marion* Criminal Circuit Court.

FRAZER, J.—*Nelson* was indicted for grand larceny, and upon the plea of "not guilty" the case was given to a petit jury. After deliberating during the period of three days they had failed to agree upon a verdict, and stated to the court that there was no probability that they could agree. The court thereupon, on its own motion, discharged the jury from the further consideration of the case; the defendant objecting. Subsequently, on motion, the defendant was discharged from further custody upon the indictment; the prosecuting attorney excepting. The State having reserved the question raised by the action of the court below in discharging the prisoner, presents that question now for our consideration.

The provision of the State constitution forbidding the putting of a party "in jeopardy" more than once for the same offense, is found also in the constitution of the *United States*,

and in that of most of the States, and its embodiment thus as fundamental law, beyond the reach of ordinary legislative repeal, was probably but adopting and sanctifying a venerable maxim of the common law, which had been long and greatly cherished by that country from which the great body of our jurisprudence has been derived. Hypercritical analysis of the language of the constitution may make it mean more than the ancient common law maxim, as indeed a literal adherence to the exact words of any document will often result in giving it a meaning never intended to be conveyed by the terms employed. If common sense and historical knowledge are once discarded by our courts, when called upon to interpret constitutions, the results will hardly fail to create serious doubts whether a written constitution, difficult to change, is not after all a curse rather than a blessing.

An unequivocal proposition to declare by constitutional provision that the mere failure of a petit jury to agree upon a verdict in a criminal case should have the legal effect of a verdict of "not guilty," would, we think it safe to say, never have met the approbation of any convention in *America*, representing the people in their sovereign capacity. It is not admissible to suppose that the same proposition would be more favorably received if expressed in other language. It follows then, if the purpose of interpretation be to ascertain the true meaning of the instrument, that we are not to suppose that the constitution was intended to have the effect supposed, unless its language is incapable of any other reasonable interpretation. "No person shall be put in jeopardy twice for the same offense." In the strictest sense of this language, a second indictment of a party for the same offense would in all cases be forbidden. In that sense the party is put in "jeopardy," danger, hazard, liability to be punished, by the commencement of a prosecution against him. The bringing in of an indictment is, to use the language of an eminent judge, "an attack by the

commonwealth upon the life or liberty of the prisoner."
But we believe that no authority can be found which main-
tains so broad a proposition.   It is everywhere conceded that
the "jeopardy" contemplated does not begin until a petit
jury is sworn and "charged" with the offense.   *Epes'* Case,
5 Grat. 676; *Hines* v. *The State*, 8 Humph. 597.   So if the
jury be afterwards discharged on account of the illness or
death of a juror, or of the judge, or because the term of the
court has expired, it is settled that the prisoner has not been
in "jeopardy," and may again be put upon his trial.   *Fletcher*
v. *The State*, 6 Humph. 249; *Mahala* v. *The State*, 10 Yerg.
532; *The State* v. *Curtis*, 5 Humph. 601; *The Commonwealth*
v. *Fells*, 9 Leigh 613; *Hector* v. *The State* 2 Miss. 166;
*The United States* v. *Haskell*, 4 Wash., C. C., 402; *Nugent* v.
*The State*, 4 Stew. & Port. 72; *In Re Newton*, 13 Q. B. 716;
*The State* v. *McLeman*, 2 Hill S. C. 680; *The State* v. *Bat-
tle*, 7 Ala. 259; *Moore* v. *The State*, 1 Walk., (Miss.,) 134;
*Wright* v. *The State*, 5 Ind. 290.   Indeed it is conceded
everywhere that where the jury has been discharged upon
necessity, the prisoner may be again put upon trial.   But
the language of the constitution contains no exceptions,
and the courts have no power to interpolate any; they must
ascertain its meaning as it is written, and administer it
accordingly, and in the cases cited there was no attempt to
do more.   The solid ground upon which those cases rest is
that the language of the constitution was obviously never
intended to embrace such cases.   But it is virtually held in
the most of the same states that the necessity which pro-
duced the discharge of the first jury must be a violent phys-
ical necessity, as distinguished from a moral necessity aris-
ing out of attendant circumstances, as, for example, the
plain fact that the jury never can conscientiously agree upon
a verdict, as in the case before us.   Was it meant that, in
such a case, the jury should nevertheless be kept in confine-
ment for months, until the last moment of the term?   Was
it intended to require the observance of a foolish form

which it was morally certain would result in no advantage to the prisoner? We cannot bring ourselves to affirmative answers to these questions. We cannot so construe the constitution, for the reason that its language was, in our opinion, never intended to be so understood. Differing then from the spirit of what has been heretofore held in this State, and from the doctrine held in *Pennsylvania, Tennessee, Virginia, North Carolina* and *Alabama,* we are, however, in accord with the Supreme Court of the *United States,* and of *Massachusetts, Mississippi, New York, Illinois* and *Kentucky.* The *United States* v. *Perez,* 9 Wheat. 579; The *Commonwealth* v. *Bowden,* 9 Mass. 494; The *Commonwealth* v. *Purchase,* 2 Pick. 521; The *People* v. *Goodwin,* 18 Johns. 187; *Moore* v. *The State,* 1 Walker, (Miss.,) 134; *Stone* v. *The State,* 2 Scam. 326; *The Commonwealth* v. *Olds,* 5 Lit. 137.

The law as thus held is essential to the efficient administration of the criminal code, and the consequent protection of society. It removes in a large measure the temptation to tamper with jurors for the purpose of preventing an agreement, renders it less probable that any juror will from unworthy motives refuse to find according to the law and evidence, closes a door against the escape of the guilty, and does not operate as an unreasonable hardship upon the innocent who may be falsely accused of crime. It does not follow that the defendant may not avail himself of any abuse of discretion by the judge in discharging the jury without sufficient cause. The circumstances may always be made matter of record, and unless a proper case is shown to justify the action of the court, the discharge will be held equivalent to a verdict in favor of the defendant.

In the case before us the jury had deliberated seventy-two hours. That further confinement could have resulted in an honest agreement is not within the range of probability. Further consideration, if we assume that the jury was composed of intelligent, honest men, must have produced nothing but a confirmation of conclusions already formed. To

have kept them longer, would have been to inflict punishment for failing to surrender deliberate opinions. They might possibly have thus been forced by exhaustion or suffering to assent to a verdict, but it would have been rather a decision upon the physical endurance of the jurors, than a finding upon the law and evidence. We have outgrown the ancient practice of carting juries from shire to shire in the train of the judges, or of denying them meat and drink for the purpose of forcing them to agree. In the view of existing law and civilization a verdict is the honest accord of twelve intelligent minds upon the issue submitted to them, and a form of words extorted by force or suffering ought never again to be heard of in a court of justice.

The judgment is reversed, and the cause remanded with directions to proceed according to this opinion.

*W. W. Leathers,* for the State.

*J. W. Blake,* for appellee.

