[No. 3199.]

BUD POWELL *v.* THE STATE.

1. CONSTITUTIONAL LAW — JEOPARDY.— By section 14 of article 1 of the Constitution of this State it is provided that "No person for the same offense shall be twice put in jeopardy of life or liberty, nor shall a person be put again on trial for the same offense after a verdict of not guilty in a court of competent jurisdiction."

2. SAME — CASES OVERRULED.— When a person has been placed on his trial upon a valid indictment for an offense involving life or liberty, in a competent court, and a competent jury has been impaneled, sworn, and charged with his case, he is "put in jeopardy" within the meaning of the said constitutional provision, and from a repetition thereof upon the same indictment, or upon any other indictment for the same offense, this constitutional shield forever protects him. Wherefore, after jeopardy has once so attached, if without lawful authority the trial court discharges the jury without his consent and before verdict, he cannot legally be again tried for the same offense. In so far as a contrary doctrine is held in *Moseley* v. *The State*, 33 Texas, 671, and *Taylor* v. *The State*, 35 Texas, 97, those cases are hereby overruled.

3. CONSTITUTIONAL CONSTRUCTION — JEOPARDY.— High authorities hold that Legislatures are not empowered to interpret or declare the construction of a constitutional provision, nor to abrogate the settled judicial construction of a constitutional provision. "Legislative power" does not comprehend functions which are essentially judicial or executive. Hence it would seem that article 20 of the Code of Criminal Procedure, which in effect would make jeopardy mean no more than "legal conviction," is without constitutional warrant or validity.

Syllabus.

4. SAME.— The terms *former jeopardy* having received a settled judicial construction prior to their use in the Constitutions of this State, the presumption obtains that the authors of those Constitutions had that construction in view whenever they inserted that phrase in their provisions; and it follows that no different construction of "former jeopardy" can be established by legislative enactment.

5. SAME — DISCHARGE OF TRIAL JURY — CASE STATED.— The Code of Criminal Procedure, in article 701, provides that a trial jury may be discharged "when they cannot agree and both parties agree to their discharge, or when they have been kept together for such a time as to render it altogether improbable they can agree; in this latter case the court, in its discretion, may discharge them." Appellant was twice tried on the same indictment for felonious theft. On his first trial the jury disagreed, and the court, over his objection, discharged them after they had been in retirement for about three hours without finding a verdict. In explanation of his action in discharging the jury against the objection of the defendant, the trial judge certifies, in effect, that, in his opinion, they had been out a "reasonable time," differed honestly, reasonably and unchangeably, as the case had not been fully developed and the evidence was inconclusive, and some of the jurors had been kept out on another case the preceding night. Upon his second trial the appellant pleaded the discharge of the first jury as former jeopardy. but the trial court instructed the second jury to find the plea untrue; which they accordingly did, and convicted the appellant of the felonious theft charged in the indictment. *Held*, in substance, that the appellant was "put in jeopardy" on his first trial, and had the constitutional right to plead that jeopardy in bar of the second trial, inasmuch as the first jury were not discharged because it was "altogether improbable they could agree," but for reasons other than those upon which the said article 701 conditions the discretionary power of a trial court to discharge a jury without the consent of the defendant; wherefore the unauthorized discharge of the first jury was tantamount to an acquittal, and the constitutional guaranty against a second jeopardy or trial for the same offense was a plenary defense in the trial whereat the appellant was convicted. See the opinion of the court for an elucidation of this and the preceding rulings.

ON MOTION FOR REHEARING.

6. SAME.— The State having moved for a rehearing, note the opinion of the court thereon, delivered by Hurt, Judge, reasserting and supporting the principles enunciated in the opinion rendered on the original hearing.

7. SAME — PRACTICE — JUDICIAL DISCRETION.— The assumption that, notwithstanding the constitutional guaranty against second jeopardy or trial for the same offense, this inestimable bulwark of liberty rests merely in the discretion of the trial judge, and that the exercise of that discretion is not revisable on appeal, cannot be allowed to obtain.

8. DISCHARGE OF TRIAL JURY.— The reasons assigned in this case by the trial judge for discharging the jury before verdict, and against the protest of the defendant, were not such as vested that power in the court below. Note the comments upon them set out in the opinion overruling the motion for rehearing.

APPEAL from the District Court of Atascosa. Tried below before the Hon. D. P. Marr.

The indictment was filed November 8, 1883, and charged the appellant and Mike Wright and James Mission, jointly, with the theft of one head of cattle, the property of G. W. M. Duck, in Atascosa county, Texas, on the 27th day of May, 1883. A severance was had and appellant was first placed upon trial, but the jury, after retirement in charge of the case, were discharged before finding a verdict, and over appellant's objection reserved by bill of exceptions. At a subsequent day of the same term he was again placed upon trial on the same indictment, but before a different jury. He pleaded the first trial and the discharge of the first jury as constituting former jeopardy, which entitled him to a discharge and to a dismissal of the cause. The opinion of this court discloses the disposition made of the plea. The second trial resulted in the conviction of the appellant, and the assessment of his punishment at confinement in the penitentiary for a term of two years.

*Teel, Price & Merriweather*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.— In this case appellant was twice placed upon his trial under the indictment at the same term of the district court. The result of the first trial and the causes are shown by defendant's bill of exceptions, which recites the facts as follows, viz.: " Be it remembered that on the trial of this cause the same was submitted to the jury on the evidence, argument of counsel and charge of the court, and the jury retired to consider of their verdict, and on the same day, after being out about one hour and a half, returned into court and stated they could not agree; that they could not agree in a month; and the court asked them if it was a question of law or a question of evidence, and they stated it was a question of fact and law; and the court asked them how they were divided as to numbers, and they stated eight to four; and the court asked the State's attorney and the defendant's counsel if they were willing for the jury to be discharged, and the State's counsel consented, but the defendant, through counsel, objected; and the jury again retired, and after they had been out a second time for one hour, they again came into court, and stated they could not agree, and in reply to the question of the court as to the possibility of agreeing, the foreman stated that there was no possibility of their agreeing on a verdict; and the court again asked the State's attorney and defendant's counsel if they were willing that the jury be discharged, and defendant objected. The jury had then been

out one hour longer, and thereupon the court discharged the jury. To all of which action and ruling of the court defendant excepted and tenders his bill of exceptions," etc.

In explanation of the ruling and action, the learned judge states that "the court held that the jury had been out a reasonable time, and was satisfied from their statements that they had an honest difference of opinion, and that the case was one upon which jurors might very reasonably differ in opinion, as the case had not been, in the court's opinion, fully developed on either side, or as full as it might be, and that the evidence adduced was such as might reasonably lead to different conclusions. Besides, some of the jurors having been kept out on a case the night before on another case, the court did not feel disposed to compel them to be kept over another night, when the court believed their disagreement was in good faith and unchangeable."

When the case was called afterwards at the same term for a second trial, the defendant pleaded "former jeopardy" on account of the facts above stated in the bill of exceptions, and asked that he be discharged and the further prosecution of the case be dismissed. With regard to this plea the court instructed the jury to find the same "untrue, and so state in their verdict whether they convict or acquit the defendant," and the jury returned their verdict upon said plea according to the instruction.

Was the plea a good one for former jeopardy, and should the same have been sustained?

Our Constitution provides that "no person for the same offense shall be twice put in jeopardy of life or liberty, nor shall a person be put again upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction." (Const., art. I, sec. 14.) A similar provision is contained in article V, amendments to the Constitution of the United States, and, with slight changes of verbiage but in substance the same, may be found in all our State Constitutions from that of 1845. (Const. 1845, art. I, sec. 12; Const. 1866, art. I, sec. 12.)

What is the meaning of the word "jeopardy" as used in the Constitution?

An attempt to define the meaning was made by the Legislature in the adoption of the Penal Codes in 1856. The eighteenth article of the original Code of Criminal Procedure was in these words: "No person for the same offense can be twice put in jeopardy of life or limb. This is intended to mean that no person can be subjected to a second prosecution for the same offense after having once

been prosecuted in a court of competent jurisdiction *and duly convicted.*" (Italics ours.) This article was followed by one·explaining its meaning in these words: "The foregoing article will exempt no person from a second trial who has been convicted upon an illegal indictment or information and the judgment thereupon arrested, nor where a new trial has been granted to the defendant, *nor where a jury has been discharged without rendering a verdict, nor for any cause other than that of a legal conviction.*" (Art. 19; Pasc. Dig., arts. 2484, 2485.)

In the Revision of the Codes, in 1879, article 18, *supra*, is entirely omitted, but article 19 is re-enacted almost literally, as follows: "By the provisions of the Constitution no person shall be exempt from a second trial for the same offense who has been convicted upon an illegal indictment or information, and the judgment thereupon arrested; nor where a new trial has been granted to the defendant; nor where a jury has been discharged without rendering a verdict, nor for any cause other than that of a legal conviction." (Code Crim. Proc., art. 20.)

From these provisions it is most evident that, if it could so be done, a fixed and definite meaning has been given by the Legislature to the words "former jeopardy," and that meaning, as declared, is that "former jeopardy" is nothing short of a prior legal conviction.

Had the Legislature authority to interpret and declare the meaning of a constitutional provision? "The Constitution of a State is higher in authority than any law or order made by any body assuming to act under it." "Every positive direction in it contains an implication against everything contrary to it, or which would frustrate or disappoint the purpose of that provision." "Aside from the special limitations of the Constitution, the Legislature cannot exercise powers which are in their nature essentially judicial or executive. These are by the Constitution distributed to other departments of the government. It is only the 'legislative power' which is vested in the senate and assembly." (Cooley's Const. Lim., 4th ed., 108.) "The legislative power we understand to be the authority under the Constitution to make laws, and to alter and repeal them. Laws, in the sense in which the word is here employed, are rules of civil conduct, or statutes which the legislative will has prescribed." (Cooley, p. 110.) With regard to its own acts the "legislation is either introductory of new rules or declaratory of existing rules. A declaratory statute is one which is passed in order to put an end to a doubt as to what is the common law, or

the meaning of another statute, and declares what it is and ever has been.". (Cooley, p. 112.)

But the Legislature has no authority to interpret or declare a matter of constitutional construction, nor can it set aside a construction of a constitutional provision which has become fixed and settled by judicial determination. With regard to its own enactments, the rule is that "as the Legislature cannot set aside the construction of the law already applied by the courts to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the Legislature permits to remain in force. To declare what *is or has been* is a judicial power; to declare what the law *shall be* is legislative. One of the fundamental principles of all our governments is that the legislative power shall be separate from the judicial." (Cooley, p. 115.)

Before their use and adoption into our Constitution of 1845, the terms "former jeopardy" had received their meaning and significance from judicial decisions. True, there had been a diversity of views and a contrariety of decision; still, if there had been no certainty with regard to the matter, it was not for the Legislature but the courts to decide it; and the attempt upon the part of the Legislature would have been but an usurpation of authority which the courts would not hesitate to disregard if not in harmony with their opinion. As before stated, however, the meaning of the term "former jeopardy" has, in our opinion, been fixed long before the words were used in the Constitution. And whatever may be the difference of opinion entertained, the decided weight and respectability of authority has uniformly held to the construction given by Mr. Cooley in his great work on constitutional limitations. He says: "A person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction, upon indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. And a jury is said to be thus charged when they have been impaneled and sworn. The defendant then becomes entitled to a verdict which shall constitute a bar to a new prosecution; and he cannot be deprived of this bar by a *nolle prosequi* entered by the prosecuting officer against his will, or by a discharge of the jury and continuance of the cause." (Cooley's Const. Lim., 15th ed., 404.)

Mr. Bishop says: "But when, according to the better opinion, the jury, being full, is sworn, and added to the other branch of the court, and all the preliminary things of record are ready for the trial, the prisoner has reached the jeopardy from the repetition of

which our constitutional rule protects him." (1 Bishop, Cr. Law, 7th ed., § 1015. See especially *Weaver* v. *The State* (Indiana Supreme Court, October, 1882), reported in 4th Criminal L. Magazine, p. 27, and the note to said case.) The most thorough discussion and elaboration of authorities upon this subject may be found in the note to *U. S.* v. *Perez*, 1 Leading Crim. Cases (Bennett & Heard, 2d ed.), p. 461, and which fully sustains the above position. We call especial attention to this note.

Following in the wake of these authorities, this court has said, in *Vestal* v. *The State*, 3 Texas Ct. App., 652: "It seems now to be quite as well established by authority as reason that, when a party is once placed upon his trial for a public offense, involving life or liberty, on a valid indictment, before a competent court, with a competent jury impaneled, sworn, and charged with the case, he has then reached and is placed in jeopardy, from a repetition of which, upon the same indictment, or any other indictment for the same offense, this constitutional shield forever protects him; and, after jeopardy has once so attached, a discharge of the jury, without the consent of the defendant, before they have rendered a verdict, is equivalent to a verdict of acquittal." (See, also, the word "Jeopardy" defined in conformity with these authorities, and others, 2d Bouvier's Law Dictionary, 15th ed., page 1.) We are aware that a different rule has been enunciated, from the one here laid down, by the supreme court in the cases of *Moseley* v. *The State*, 33 Texas, 671, and *Taylor* v. *The State*, 35 Texas, 97; which cases are hereby overruled on this point.

This construction of the term *jeopardy* in our Constitution being the proper one, as settled by the decisions of the courts before the Constitution was adopted, it is to be presumed that the word was used in that sense when our Constitution makers put it into the Constitution. (*Thomas* v. *The State*, 40 Texas, 36; *Parchman* v. *The State*, 2 Texas Ct. App., 228.) If this be so, then it must follow that the Legislature had no authority to give it another and a different meaning from that which it must have been intended it should have. And it must further follow that the attempted act on the part of the Legislature was without authority, and is not binding upon the courts. If the views heretofore expressed, with regard to jeopardy, be correct, then the appellant in this case was, as shown by his bill of exceptions, in legal jeopardy when the jury trying him were discharged by the court.

The question now to be considered is, Was the discharge of the jury by the court, without the prisoner's consent and over his objec-

tions, such an infringement of his constitutional rights as would enable him to plead it successfully to a second prosecution under the same indictment? Our statute provides: "The jury may be discharged after the cause is submitted to them, when they cannot agree, and both parties consent to their discharge, or where they have been kept together for such time as to render it altogether improbable they can agree; in this latter case the court, in its discretion, may discharge them." (Code Crim. Proc., art. 701.)

We might, with great plausibility and supported by the great weight of authority, assume the position that the Legislature, in making it discretionary with the court to discharge the jury, except in cases of extreme necessity, is also an usurpation of authority which they had no power to exercise, in view of the constitutional restrictions with regard to jeopardy. This question we do not feel called upon to decide in this particular case.

In the well considered opinion in the case of *Parchman* v. *The State*, Presiding Judge Ector enunciates the law thus: "We believe, after a careful examination of the authorities, that if the court had no jurisdiction of the cause, or if the indictment was so defective that no valid judgment could be rendered upon it, or if by any regular necessity the jury are discharged without a verdict,— which might happen from the sickness or death of the judge of the court, or the inability of the jury to agree upon a verdict after sufficient deliberation and effort,— or if the term of the court, as fixed by law, comes to an end before the trial is finished, or the jury are discharged with the consent of the defendant expressed or implied, or if, after verdict against the accused, it has been set aside on his motion for new trial or in arrest of judgment, the accused may, in all such cases, again be put upon trial for the same facts charged against him, and the proceedings had will constitute no protection." (*Weaver* v. *The State*, 4 Crim. L. Magazine, p. 26 and note.)

Under the statute above quoted, if said statute be held as constitutional, the court is empowered with discretion to discharge a jury without the consent of the prisoner, "where they have been kept together for such time as to render it altogether improbable they can agree." This discretion, then, must be measured by the time they are kept together, since the improbability that they will agree is made to depend upon the time.

Now, was the time, as shown by the bill of exceptions in this case, sufficient to warrant the court in the exercise of its discretion to discharge them? The jury, when they first returned into court, had been out one hour and a half. When they returned the second

time they had been out one hour, making two hours and a half. The third time they were out one hour longer, making in all three hours and a half; after which they were discharged by the court. In his explanation, the learned judge states that "the court held that the jury had been out a *reasonable* time." Reasonable time was not the measure of his discretion. The jury must "have been kept together for such a time as to render it altogether improbable that they can agree." Would three hours and a half be such a time as would necessarily render it *altogether improbable* that they could agree? Not that they would, but that they *could* agree? We think not. And so believing, we are of opinion the court abused his discretion in thus discharging the jury to the injury of the defendant's rights.

The other reasons given by the learned judge do not help the matter — which was solely a question of time. A mature consideration of the whole question has led us to the conclusion that, in law, appellant's former jeopardy was well pleaded, and that the court erred in instructing the jury to find the plea untrue. The judgment is reversed and the prosecution is dismissed.

*Reversed and dismissed.*

[Opinion delivered June 21, 1884.]

[REPORTER'S NOTE.— On the 24th day of June, 1884, three days after the rendition of the foregoing opinion, the assistant attorney general, on behalf of the State, filed a motion for rehearing, the substance of which will appear in the admirable brief and argument submitted in its support, which follows next in order. The motion was taken under advisement by the court and transferred to the Tyler branch, where, on the 10th day of December, 1884, the rehearing was refused, and the original opinion, reversing the judgment and dismissing the prosecution, was approved. With that opinion, delivered by Judge Hurt, the report of this case concludes.]

*J. D. Templeton*, Attorney General, and *J. H. Burts*, Assistant Attorney General, for the State. Article 701, Code Crim. Proc., is as follows: "The jury may be discharged when the cause is submitted to them, when they cannot agree, and both parties consent to their discharge, or where they have been kept together for such time as to render it altogether improbable that they can agree; in this latter case the court, in its discretion, may discharge them." This article, in the plainest words, authorizes the court, in its discretion, to discharge the jury when they have been kept together for such time as to render it altogether improbable that they can agree.

We do not contend that it is an arbitrary discretion to be exercised according to the whim or caprice of the trial judge. The .

words do not authorize such a construction of the article. Such dis-
cretion is not given probably in any instance, where revision is
practicable and its exercise can be brought in review, but before the
court will reverse on account of the manner in which the discretion
has been exercised, it must appear that it has been abused and that
injury to the defendant has resulted from that abuse. The time the
jury are to be kept together is not time in the abstract, for were
that true the statute and perhaps the Constitution would have fixed
the time in hours and minutes; but it is time in connection with the
amount and the nature of the evidence in the case and the many
other circumstances and conditions attending every trial, and that
are peculiar to it. If the judge's discretion, as the court says, "must
be measured by the time they (the jury) are kept together," no rule is
yet furnished to the judge; and nothing is settled, for the question
still is, what length of time is the *measure* of the discretion? There
can be no measured discretion; if it is controlled by an arbitrary
rule, then it is not any longer discretion.

The question of the propriety of discharging a jury, and what is
to be considered, is thus stated in *Ex parte McLaughlin*, where a
great many authorities are cited: "After a jury, composed of hon-
est, intelligent, and impartial men, as all jurors are presumed to be,
have deliberated a reasonable length of time, and come into a court
with the statement that they have not agreed upon a verdict, this
statement is certainly conclusive of the fact that they have not
agreed; and if such report is accompanied with a unanimous expres-
sion of the jurors that they cannot agree, and that further delibera-
tion would not enable them to agree, I am not able to discover why
such report and expression, in connection with the fact that the jury
had already, in the judgment of the court, deliberated a proper and
reasonable length of time to enable them to arrive at an agreement,
or to enable them to arrive at an intelligent conclusion as to a
rational probability of agreement upon further deliberation, together
with surrounding circumstances of the case, within the knowledge
of the court — such as the amount and the character of the evidence
presented for their consideration, the number of preliminary issues
involved by the evidence as presented, the habits of thought and
temperament of the individual members of the jury — should not
enable the court to arrive at a conclusion, beyond a reasonable doubt,
that the jury would not agree upon further and continued delibera-
tion. When such facts are shown to exist, a legal necessity, in my
judgment, has arisen for the discharge of the jury." (10 Am. Rep.,
276.)

Now in this case it does not appear anywhere in the record what the facts were, that were proven on the first trial, nor how much evidence there was, nor the number of witnesses; but it is hardly presumable that there was much more evidence than there was on the second trial, had on the same day. On this last trial, the whole of the testimony for the consideration of the jury is embraced within six loosely written pages of the record, so that no great amount of time was needed to canvass it. The jury had twice come into court, and under the sanction of their oaths twice stated to the court their inability to come to an agreement on a verdict, and informed the court how they were divided; and it appears that they stated that they had not only disagreed about the facts, but about the law also.

It is believed that in every State in the Union, in crimes of the grade of that with which Powell stands charged, the judge is permitted to ·discharge the jury when satisfied a verdict will not be reached, and, after an extended search, we have been unable to find a single case, not modified or overruled, where a court of final resort has charged the trial judge with an abuse of the authority, and has, therefore, discharged the defendant from further answering for his crime. It is not necessary to say that there is a provision similar to that in our Constitution, in the Constitution of all the States, protecting defendants against second jeopardy, and in fact it would be a binding rule as a part of the common law if there was no constitutional provision. (*Lee* v. *The State*, 7 Amer. Rep., 613.)

In *People* v. *Olcott*, 2 Johns. Cases, 300, Kent, after an examination of all the authorities then extant, as is said, came to the conclusion that in "every question of this kind, the discharge for the non-agreement of the jury, must rest with the court under all the particular or peculiar circumstances of the case;" and further, "whether the mental disability (to agree) be produced by sickness, disease or incurable prejudice, the application of the principle is the same."

In the case of *The Commonwealth* v. *Bowden*, 9 Mass., 494, the jury said "they had not agreed on a verdict and it was not probable that they ever would agree." The supreme court in passing upon the action of the trial court in discharging the jury and ordering a mistrial to be entered, said "it would neither be consistent with the genius of our government nor the laws to use compulsory means to effect an agreement among jurors." Keeping the jury together until they expressed an agreement, whether they actually agreed or not, was the compulsion alluded to by the court. In *The*

*People* v. *Goodwin*, 18 Johns., 188, Chief Justice Spencer sanctioned the discharge of the jury among other things on the ground that they had been kept together so long as to preclude all hope of their agreeing, unless compelled by famine or exhaustion; but in that case the jury had been kept together only seventeen hours, all of one night being included in the time, during which it is scarcely to be expected that there was much deliberation and consultation upon their verdict, and there was, it appears, but one dissenting juror.

In *United States* v. *Perez*, 9 Wheat., 579, Judge Story says: " It is in the sound discretion of the court to discharge any disagreeing jury;" adding that "the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests in this, as in other cases, upon the responsibility of the judges under their oath of office."

In *The State* v. *Walker*, 26 Ind., the court says, p. 352, " after careful examination of the question we are clearly of the opinion that the discharge of the jury because of their inability to agree after ample time spent in consultation, and after it is apparent to the *court* that they cannot agree upon a verdict, constitutes good cause for their discharge; " and further, " when it is once settled they cannot agree, the result to the defendant is the same, whether they are discharged before or at the close of the term."

To the same effect is *Nelson* v. *The State*, 26 Ind., 366. Commenting on the power to discharge a jury, the court say: " It removes in a large measure the temptation to tamper with juries for the purpose of preventing an agreement, renders it less probable that any jurors will, from unworthy motives, refuse to find according to the law and evidence, closes a door against the escape of the guilty, and does not operate as an unreasonable hardship upon the innocent who may be falsely accused of crime." (p. 369.)

This power to discharge the jury is maintained in *The State* v. *Wilson* (50 Ind.), 19 Amer. Rep., and *Lee* v. *The State* (26 Ark., 266), Amer. Rep., 613.

In North Carolina, Tennessee and Alabama, in which States it was at first held that jurors could not be discharged from the consideration of the case on account of their failure to agree, but the cases denying the authority have been overruled or materially modified, and a rule in harmony with common humanity and the civilization of the age adopted, so that a jury conscientiously disagreeing is not treated with a severity equal to that visited upon the defendant when guilty. *Barrett* v. *The State*, 35 Ala., 406; *The State* v. *Washington* (89 N. C.), 45 Amer. Rep., 700; *State* v. *Poole*, 4 Lea,

Tenn., 363, overruling or modifying *Mahala* v. *The State*, 10 Yerg., 535, where the right to discharge a jury had been denied. See also *Price* v. *The State*, 36 Miss., 543; *People* v. *Schoeneth*, 44 Mich., 489, where it is said the duty of the court to discharge a disagreeing jury is too plain for discussion; *State* v. *Crane*, 4 Wis., 422; *Wright's Case*, 75 Va., 914, changing the former rule in that State, and sustaining a statute permitting the discharge of the jury in any case when, in the opinion of the court, they cannot agree upon a verdict; *Dye* v. *Commonwealth*, 2 Gratt., 568; *McCreary* v. *Commonwealth*, 29 Pa. St., 323; *State* v. *Tatum*, 49 Iowa, 471, sustaining a statute permitting the discharge of the jury when "at the expiration of such time as the court may deem proper it satisfactorily appears that there is no reasonable probability the jury will agree." *Ex parte Vincent*, 43 Ala., 302, which seems to be in conflict with *Barrett* v. *The State*, above cited, was by a sort of semi-colon court.

In none of these cases cited had the term of the court expired, nor had any necessity, except the disagreement of the jurors, arisen to call for their discharge. The time the jurors had been considering of their verdict varied from a few hours to three or four days. In all of them it was only demanded that after time for deliberation, according to the condition of each particular case, the judge trying it should be satisfied that the jury would continue to disagree.

The authority to discharge a jury on account of their inability to agree upon a verdict is expressly asserted by Judge Cooley, Constitutional Lim., 401, 5th ed., and in Bishop's Criminal Law, secs. 1033 and 1035, it being said, in section 1035, that the necessity of the jury agreeing on a verdict is equivalent to a necessity to convict, which construction cannot be applied consistently with sound principles to the provisions of the Constitution intended for the benefit of the accused. In section 1041, Criminal Law, Bishop seems to hold that when the judge concurs with the jury in the statement that they cannot agree, it is conclusive of that fact, and the propriety of their discharge cannot be inquired into.

Our effort has been to show to the court from the authorities that the judge can discharge the jury when it is unable to agree; and while this is not perhaps an unrevisable discretion on the part of the judge to arbitrarily exercise, without regard to the rights of the person on trial, yet there is no arbitrary rule as to the time the jury shall be made to stay together for the purpose of deliberating on their verdict. The same rule applies to the use of the discretion when it is presented for revision that applies in other instances,

where the judge is clothed with discretion. It must appear that there has been an abuse of that discretion to the harm of the defendant. This court, in holding that the judge abused the discretion under facts like those in this case, have, so far as our investigations have extended, furnished the first precedent. It appears to us that the reasoning in the McLaughlin case, quoted above, covers the reasons assigned by the judge for discharging the jury.

If the judge was allowed to exercise his judgment as to the truth or falsity of the statement twice made on their oaths by the jury that they could not agree on a verdict, then he was certainly authorized to believe that no verdict would be reached, and that their further detention could not benefit the defendant.

In the absence of any positive rule of law, this court is only substituting its opinion as to whether the jury would agree, for that of the trial court, with the jury before him; and he having heard and seen the witnesses testify, and having the benefit of many other things that cannot be presented to this court on appeal, the chances are more favorable on such a question for him to arrive at a correct conclusion than for this court; it is, therefore, far more probable that his conclusion will be correct.

To discharge a jury when it is perfectly obvious there had not been time to canvass the testimony of the witnesses in a complicated case, would be undoubtedly an abuse of discretion, but it is not made to appear that such was the case here. But it does appear that they had thoroughly considered the evidence, and they had returned into court and had had one of the witnesses recalled and re-examined, and then, afterwards, if we understand the record correctly, had deliberated on the case for two hours and a half. The statement of the twelve men composing the jury, twice made, that they were unable to agree, is more convincing of that fact, especially when concurred in by the judge, than the opinion of this court, that they could agree, and it is difficult to see how the mere lapse of time, after it is obvious they had considered the evidence, as in this case, would add to or detract from the force of their statement. It is the inability to agree that makes necessary and proper the discharge of the jury, and it cannot now, in the light of the authorities, be insisted that time only is the evidence of that fact.

In their opinion, the court, though not called on by the facts in the case to do so (and the general practice of other courts is to not question the action of the legislative branch of the government unnecessarily — Cooley, Con. Lim., 196 and 219), seems to question the constitutionality of article 701, Code Crim. Procedure, above

set out in full. The article only allows the court to exercise his discretion as to whether he will hold the jury or discharge them when they have been deliberating on the case "for such time as to render it altogether improbable they can agree." It is not a discretion to discharge them while there is any probability of an agreement. When they are unable to agree, all the authorities hold that they ought to be discharged; that it is a legal necessity, and it is difficult to see how giving the judge discretion in a case of a legal necessity can be unconstitutional. And when fully convinced they cannot agree, it would seem he ought to be required to discharge them and not have the legal power to keep them together.

This article was first made a part of the Code in 1856. Since that time there have been four constitutional conventions held in this State, and if a law was on the statute books conflicting with so important a provision of the Bill of Rights, it is not probable that it would have been allowed to pass for so long a time unnoticed. In Wisconsin there is a statute providing that when a jury shall return a second time, after due deliberation, and state their inability to agree, "they shall not be sent out again without their consent, unless they shall ask from the court some further explanation of the law."

In *The State* v. *Crane*, above cited, it was said: "This statute was doubtless designed to relieve the jury from any liability to oppression and undue severity on the part of the court, and to insure a verdict which would be the result of the voluntary action of their judgment and conscience." (4 Wis., 423.) In commenting upon this statute and the practice of the court in discharging a disagreeing jury, the court say: "We cannot bring our minds to the conclusion that the members of the convention who framed the Constitution, well knowing, as they did, the practice that had prevailed in this Territory, could have supposed that the submission of the issue in a criminal case to the second jury, the first having been discharged because it was impossible to agree, would be putting the defendant twice in jeopardy in the sense of the Constitution." This article of our Code has been the law and the practice for nearly thirty years, and was, perhaps, the practice, if not the law, before the adoption of the Code, and it is not probable that the convention intended to change this law and long continued practice. Had it so intended, it is only reasonable to suppose it would in some way have manifested that intention. See *Rogers* v. *Goodwin*, 2 Mass., 477–8; *Packard* v. *Richardson*, 17 Id., 121 and 143; Opinion of the Justices, 3 Pick., 517; *McKinney* v. *Delancy*, 5 Cranch, p. 22, for the effect

to be given to contemporaneous and long continued practical construction of the law.

It is believed that if this opinion is adhered to, and especially the *obiter dicta* it contains, it will go far towards unsettling the long continued practice of the courts; will entail great expense upon the counties; will necessitate a great deal more jury service, and strengthen the desire of fit men for the service to avoid it, and all without benefiting the person on trial.

On the only point of great practical importance in the case, the opinion is most markedly barren of authorities to support it. The court overruled two precedents in this State without citing a single precedent concurring in their opinion, and that, too, upon one of the oldest and most thoroughly and most frequently considered and discussed questions in the criminal jurisprudence of the country.

It is not necessary to overrule *Parchman* v. *The State*, 2 Texas Ct. App., 228, and *Vestal* v. *The State*, 3 Id., 648, in order to sustain the judgment below. This case is entirely unlike them.

*T. T. Teel*, of counsel for the appellant, filed an able brief and argument in opposition to the motion.

HURT, JUDGE. On the 16th day of May, 1884, this case was reached for trial, the parties announced ready, a jury was impaneled and sworn, and the defendant pleaded "not guilty." The jury retired to consider of their verdict, and after being out an hour and a half, returned into court and reported that they could not agree. The court intimated that it was willing to discharge them, but the attorney for the defense objected. They were sent back, and being out one hour longer, returned into court and stated that they could not possibly agree. The defendant being asked if he was willing for the jury to be discharged, answered that he was unwilling, and objected to the discharge of the jury. The court discharged the jury, and the defendant saved his bill of exceptions.

On the next day the case was again called for trial, and, a jury being impaneled and sworn, the defendant interposed in bar his plea of "former jeopardy;" and the plea of "not guilty" was entered by the court, the defendant standing mute. The evidence being introduced, argument of counsel heard, and the charge submitted, the jury returned into court a verdict of guilty, and assessed the punishment at two years' confinement in the penitentiary, and the defendant appealed to this court at Austin. At the Austin branch of this court the case was heard, and the judgment was reversed

and the prosecution was dismissed. The assistant attorney general filed a motion for rehearing, asking this court to review its decision, and affirm the judgment of the court below.

We have very carefully reviewed the questions raised on the plea of former jeopardy, and instead of being at all shaken in the reasoning and conclusions reached in the opinion of Presiding Judge White, a fuller investigation has thoroughly confirmed us in the belief of the soundness of each proposition announced in the opinion.

It is fixed and firmly settled in our Constitution, that: "No person for the same offense shall be twice put in jeopardy of his life or liberty; nor shall a person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction."

The first important question is, when is a person, in a legal sense, put in "jeopardy?" This being ascertained, the first proposition announced in the opinion of Presiding Judge White is impregnable; which is, that it is beyond the power of the Legislature to interpret and declare the meaning of a constitutional provision. The following authorities support this proposition, viz.: Cooley's Const. Lim. (4th ed.), pp. 107, 108; Id., 110; *Fletcher* v. *Peck*, 6 Cranch, 136; 10 Wheat., 46; *Greenough* v. *Greenough*, 11 Pa. St., 494; 12 Fla., 190; 1 Ark., 570; 16 Pa. St., 266; 15 Id., 18; 10 Fla., 238; 7 Ohio, 81; 15 Mass., 454; 16 N. Y., 432; 6 Ind., 515; 4 R. I., 324; *Calhoun* v. *McLindon*, 42 Ga., 405; 68 Pa. St., 45; 39 Id., 137; 3 Paige, 388; 12 Wheat., 148; 19 Miss., 43; 9 Md., 526.

Let us return to the first, and the important question. When is a person accused, in a legal sense, put in jeopardy? Judge Story, in the Perez case, held that jeopardy had not attached because the prisoner "had not been convicted nor acquitted." And in the Gibut case, 2 Sumner, 19, he holds that the court, upon application of the defendant, because of the constitutional provision that no person, for the same offense, shall be twice put in jeopardy of life and liberty, could not award the defendant a new trial. In the Perez case this learned judge holds that the trial judge has the discretion to discharge the jury over the objections of the prisoner, and that such discretion cannot be revised by the appellate court, and that the prisoner may again be put on trial. Under the Gibut case, though the trial judge may have violated every principle of law in his rulings on evidence, or his charge to the jury, or the prosecution may have resorted to perjury, or the subornation of perjury, to obtain the conviction of the unfortunate prisoner, no relief could be granted by the courts, by a new trial. The error in this

proposition consists in viewing the constitutional provision as a weapon for the State, as well as a shield to the prisoner. We think Judge Story is answered by Mr. Justice Davis, in this paragraph of his dissenting opinion:

" The case of a person convicted of a capital offense, put on trial again, would certainly be embraced by the terms of the article; and yet, in my view of the question, it would not present a case within its true intent and meaning. That article in the amendments to the Constitution, corresponding to a rule of the common law, according to the prevailing spirit and character of those amendments generally, was doubtless intended for the security and benefit of the individual. As such it may be waived and relinquished. That the request of a prisoner for a new trial, affording a chance of escape from death, to which a previous conviction would assign him, should be rejected from adherence to the letter of the rule, that his life would again be in jeopardy, would present an 'incongruity not readily to be admitted.' "

The authority of the Gibut and Perez cases is very much weakened by the case of *Ex parte Lange* (18 U. S., 163). In speaking of the Gibut case, Mr. Justice Miller says: " Much effort was expended by Judge Story in the case of the *United States* v. *Gibut et al.*, to prove the negative of that proposition, but his views in that regard have never been accepted by the bench and bar, as appears from the decisions of nearly all the State courts, many of which are collated in the following reported cases: *People* v. *Morrison*, 1 Hawkins's Crim. Cases; 1 Leading Crim. Cases (2d ed.), 587; *United States* v. *Williams et al.*, 1 Clifford, in which it is stated that, since the decision in Gibut's case, the point has been discussed in twenty of the States of the Union, in every one of which it has been held that a new trial may be granted on the application of the accused in any criminal case for good cause shown." (1 Bish. Cr. L. (4th ed.), secs. 844, 847; *Simcoe* v. *State*, 9 Texas Ct. App., 338; *People* v. *McCoy*, 18 Johns., 21.)

In support of the rule that jeopardy does not attach until a verdict of acquittal or conviction, are the following authorities: *United States* v. *Perez*, 9 Wheat., 579; *People* v. *Goodman*, 18 Johns., 206; *The State* v. *Haskell*, 4 Wash., 402; *Com.* v. *Olds*, 5 Littell, 140; *Klock* v. *The People*, 2 Park (N. Y.), Cr. Cas., 476; *The People* v. *Westchester*, 1 Park (N. Y.), Cr. Cas., 659.

On the other hand, we believe that, so far as number and respectability of concurring authorities can go to establish a rule of law, the following proposition regarding jeopardy is the correct rule, and

hence *the law:* A person is in legal jeopardy when he is put upon trial before a court of competent jurisdiction upon an indictment or information sufficient in form and substance to sustain a conviction, and a jury has been impaneled and sworn to try the case. In this opinion we are not discussing the question at length, but prefer to rely upon and urge authorities, and in support of the above proposition we cite the following as a small number of the authorities which sustain the proposition, and we will head the list with the *United States* v. *Gibut et al.,* 8 Sumn., 19; 1 Barb., 685; 7 Blatch., 191; 6 Sergt. and R., 586; 5 Ind., 292; 3 Rawle, 498; 7 Porter, 187; 8 Iowa, 288; 11 Harris, 12; 18 Johns., 206; 8 Ind., 416; Id., 325; 2 Dev. and B., 162; 2 Nutt and McCord (S. C.), 17; 1 Hayw. (N. C.), 241; 1 Dev. (N. C.), 491; 23 Pa. St., 12; 3 Kelly (Ga.), 53; 26 Ala., 135; 38 Cal., 479; 5 Coldw. (Tenn.), 311; 3 W. V., 699; 24 Ohio St., 134; 5 Humph. (N. Y.), 297; 55 Ala., 129; 1 Humph. (T  in.), 251.

The next question is, the prisoner being in jeopardy, what will deprive him of the constitutional shield, and relieve the case of jeopardy so that he can again be placed on trial for the same offense? When the indictment is sufficient and the proceedings are regular, before a court having jurisdiction, down to the time when jeopardy attaches, there can be no second jeopardy allowed in favor of the State on account of any lapse or error at a later stage. The following facts, however, will relieve the case of jeopardy, and authorize a second trial of the defendant for the same offense: Sickness of the judge, a juror or the prisoner (of course), death or insanity of the judge or a juror, or expiration of the term of the court before verdict, and, lastly, failure of the jury to agree on a verdict."

"Failure of the jury to agree." Upon this subject a large number of most respectable courts of appellate jurisdiction hold this to mean that the judge cannot discharge the jury against the consent of the prisoner on failure to agree on a verdict, unless they be prevented by some physical impossibility, and that the jury should be kept together until the court is about to adjourn, when of necessity they must be discharged.

The Irish courts have very carefully examined the same subject and have held, relying solely upon the common law principle cited above, that the court ought not to discharge a jury in a capital trial merely because they have been, in the opinion of the judge, a reasonable time in deliberating and have not agreed, and say they cannot agree. (*Rex* v. *Leary,* 3 Crawford and Dix, 212; *Conway* v.

*The Queen,* 7 Irish Law Reports, 149; 1 Cox C. C., 210.) This latter is said to be the fullest and most carefully considered case on this question, to be found on either side of the Atlantic, and Lord Denman, in *Regina* v. *Newton,* 3 Cox C. C., 495, alluding to this case, said the court of Queen's Bench in Ireland is a great authority, and the case in that court was decided upon much consideration, and after full resort to all the cases, which are discussed with much learning. The most recent cases in England, however, are inclined to sustain the opinion of Crompton, who dissented in an able opinion. The authorities in support of the Irish rule, some of them, are the following: 6 Sergt. and R., 577; 12 Mass., 313; 3 Rawle, 498; 2 Dev. and B., 162; 10 Yerg., 532; 2 Dev. and B., 170; 7 Porter, 187; 1 Hazlewood, 241; 26 Ala., 135; 8 Ind., 326; *Id.*, 416. Later decisions of Alabama favor the opposite doctrine, and are cited in the Attorney General's brief.

While it is not necessary for us to decide between these conflicting decisions in order to determine the question before us (speaking alone for the writer), I am of the opinion, however, that the rule stated by the Irish courts, and supported by the cases cited, is correct, and that the Legislature has no power to change or modify this rule against the prisoner.

Testing the question by our Code alone, we are of the opinion that the plea of former jeopardy was most clearly sustained by the bill of exceptions and should have prevailed. Article 701 of the Code of Criminal Procedure provides: "The jury may be discharged after the cause is submitted to them, when they cannot agree, and both parties consent to their discharge, or when they have been kept together for such time as to render it altogether improbable that they can agree; in this latter case, the court, in its discretion, may discharge them."

Do the facts in this case show that the jury were kept together for such time as rendered it altogether improbable that they could have agreed upon a verdict? Now, it is insisted by the attorney general with great zeal and confidence, backed by very high authority, that this matter is placed in the sound discretion of the trial judge, and that this court cannot revise the ruling of the court below in regard to this matter. The following are cited as a few of the authorities to be found in the books in support of this proposition: *Com.* v. *Cook,* 6 Serg. & R., 577; *Com.* v. *Clue,* 3 Rawle, 498; *United States* v. *Haskey,* 4 Wash., 411; *State* v. *Ephraim,* 2 Dev. & Battle, 162; *State* v. *Slaughter, Id.,* 170; *State* v. *Morrison,* 3 *Id.,* 115; *State* v. *Weaver,* 13 Iredell, 283; *Mahala* v. *State,* 10 Yerg.,

532; *Ned* v. *State*, 7 Porter, 187; *McCaulay* v. *State*, 26 Ala., 125; *State* v. *Carrignen*, 1 Hayw., 241; *Spiers's Case*, 1 Dev., 491; *Miller* v. *State*, 8 Ind., 326, 416; *Reese* v. *State*, *Id.*, 416; *Williams* v. *Com.*, 2 Grattan, 567; *Rex* v. *Leary*, 3 Crawf. & Dix, 212; *Conway* v. *The Queen*, 7 Irish Law Rep., 139; *Wright* v. *The State*, 55 Ind., 292; *Newton's Case*, 13 Queen's Bench, 734; *State* v. *McKee*, 1 Bailey, 654; *State* v. *Waterhouse*, Martin & Yerg., 270.

We believe that a careful examination of the cases which hold that the judge in his discretion may discharge the jury, and this discretion cannot be revised, also uniformly and of necessity hold that jeopardy does not attach before verdict. For, to us, it is a monstrous doctrine that the citizen has no other or safer assurance of the constitutional principle which shields him from being twice placed in jeopardy of life and liberty than the arbitrary discretion of the judge who tries him. He is given by his own Constitution the inestimable safeguard against being placed in jeopardy twice for the same offense, but is told by the courts of his State and county that this great bulwark of liberty rests simply in the discretion of the trial judge, from whose rulings, though he be by such rulings deprived of this constitutional safeguard, there is no appeal. To such a doctrine we can never subscribe.

We cannot leave this subject without inserting the following extract from the opinion of C. J. Ruffin, in *The State* v. *Slaughter*, 2 Dev. and Bat., 162: "I am delighted to pronounce our unanimous opinion, founded upon very deliberate consideration, that the prisoner cannot be tried again, but is entitled to his discharge, in the same manner as if he had been acquitted by a jury. In the case of *The United States* v. *Perez*, 9 Wheaton, 579, besides others in the State courts of this country, the power of the court, in its discretion, to discharge the jury, is certainly recognized in its greatest extent, and it was upon the authority of these cases zealously contended for by the attorney general, in this case; but we are all of the opinion that there is no such discretionary power in a case of felony, known to the common law of England in its ancient purity, nor as administered in its more modern times of independent judiciary, and that nothing short of an apparent flagrant and uncontrollable necessity would justify such a discharge, and authorize a second trial. Although the doctrine of this discretion has been thus promulgated by some of the American courts, it is remarkable that not a single instance of its exercise or assertion can be found in the English books, since a period was put to an arbitrary prerogative and judicial servility by the expulsion of the Stuarts. Since the revolution of 1680

a jury has not been discharged in that country, except upon an absolute disability of the prisoner to conduct his defense; as if he becomes insane or suddenly ill during the trial, or from the inability of the jury from any like causes to proceed with the trial, or other similar physical necessity and dispensation of Providence, except it be on the side of mercy, for the benefit, and at the request, or at least, by the consent of the prisoner, as in *Kinlock's* case, Foster, 16." In support of the proposition that this court has revisory power over the discretion of the court below in discharging the jury, the following authorities are cited: *Com.* v. *Bowden*, 9 Mass., 494; *Com.* v. *Roby*, 12 Pick., 503; *State* v. *Updyke*, 4 Harrington, 581; *Hurley* v. *State*, 6 Ohio, 399; *United States* v. *Perez*, 9 Wheat., 461; *Hoffman* v. *The State*, 20 Md., 425; *Price* v. *State*, 36 Miss., 533; *People* v. *Green*, 13 Wend., 55.

Believing that this court can revise the action of the court below in discharging the jury, over the objections of the defendant, we will proceed to briefly mention the facts upon which the court below acted in this matter.

The jury retired to consider of their verdict. After being out about one hour and a half, they returned, stating that they could not agree. The court intimated that he was willing to discharge the jury, but the defendant objected. They retired again, and, after being out about one hour, returned, repeating that it was impossible for them to agree; whereupon they were discharged by the court over the objections of the defendant.

The Code will not permit the jury to be discharged over the objections of the defendant, unless they have been kept together for such time as to render it *altogether improbable that they can agree.* The jury were kept together two hours and a half. Is such length of time sufficient to render it *altogether improbable that the jury can agree?* This question, propounded to the practitioner, would very promptly be answered in the negative. Submit it to any person at all acquainted with trials by jury, and the same answer would be given. But it is insisted by the State that it was *impossible* for them to agree. The Code requires them to be kept together such time as will render it altogether improbable that they can agree. It must be " ALTOGETHER *improbable that they can agree.*" The probabil,es must all be against the power (*can*, not *will*) to agree. From t  time in this case — two hours and a half — is it altogether improbable that the jury could have agreed? Most certainly the question should, and would, by all reflecting minds, be answered in the negative. How frequently is it the case that juries state that there is

no possibility of their agreeing, and afterwards, in a comparatively short time, do agree! This frequently occurs in all courts, and by the best of juries. And just here we would observe that if juries were taught that they would be kept together until there is no probability but that they could agree, mistrials would be rare indeed.

But the attorneys for the State insist that we must not only look to the time, but to all the surrounding circumstances in passing on the question as to whether they have been kept together such time as will render it altogether improbable that they can agree, and refer us to the following explanation of the learned judge below: " The court held that the jury had been out a reasonable time, and was satisfied from their statements that they had an honest differ-erence of opinion, and that the case was one upon which jurors might very reasonably differ in opinion, as the case had not, in the court's opinion, been fully developed on either side, or as full as it might be, and that the evidence adduced was such as might rea-sonably lead to different conclusions. Besides, some of the jurors having been kept out in case the night before on another case, the court did not feel disposed to compel them to be kept over another night, when the court believed their disagreement was in good faith and unchangeable."

We will notice some of the reasons of the learned judge:

1. " The court was satisfied the jury could not agree because from their statements they had an honest difference." This must have been a very peculiar jury, or we should consider, when all juries say they cannot agree, that they have an honest difference of opinion and should be discharged.

2. " The evidence was such as might reasonably lead to a different conclusion, and that the case was one upon which juries might reasonably differ in opinion." If, indeed, the evidence led to different conclusions, and the defendant was being tried by an honest jury, the probabilities of an agreement on a verdict of not guilty were very great, and hence, the defendant was acting wisely, under such a case, in objecting to, and protesting against, their discharge. A case in which the evidence reasonably tends to the conclusion of innocence as well as guilt, falls short of the proof necessary to convict a citizen of felony.

3. "The case had not, in the court's opinion, been fully developed on either side, or as full as it might be." By this we are most seriously reminded of the time when courts were pliant and servile tools in the hands of an arbitrary prerogative of the sovereign, and juries were discharged because the evidence was insufficient to convict, and

the unfortunate wretch remanded to jail to await another trial when the government should be prepared to secure his conviction.     We believe it to be a terrible doctrine indeed, for the courts of the country to be permitted to discharge a jury because the case was not fully developed, or to look to its development at all, in determining the question of discharge.     The court, however, says it was not fully developed on either side.     We had thought the burden was upon the State to develop its case, and that until this was done, nothing whatever was required of the defendant.     And when a case is developed against the defendant, if sufficient to prove guilt, it is fully developed, and should be presumed the whole case, unless evidence was adduced by the defendant; or, on the other hand, it is not the province of the judge to watch the interest of the defendant and discharge the jury because he has not met the case of the State.     This is a matter to be considered on a motion for new trial.

While we have not discussed the questions involved in this case fully, we have, however, given them the most careful consideration, and are perfectly satisfied with the reasoning and conclusions made and reached by Presiding Judge White, in his opinion in this case, delivered at Austin.

Speaking for myself alone, I desire to say that the rule laid down by the Irish court in *Rex* v. *Leary, supra,* and *Conway* v. *The Queen, supra,* is, in my opinion, more in harmony with principle, and is supported by the greater weight of authority.     And while this is my opinion, it must be distinctly understood that the decision in this case is made alone upon our statute; that we hold that the facts as presented by the bill of exceptions fail to show that the jury were " kept together a sufficient length of time as to render it altogether improbable that they could agree."

The motion for rehearing is refused.

*Rehearing refused.*

[Opinion delivered December 10, 1884.]